BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ERIC W. SWANIS, ESQ.
Nevada Bar No. 6840
GREENBERG TRAURIG, LLP
3773 Howard Hughes Pkwy
Suite 400 North
Las Vegas, Nevada  89169
Telephone:  (702) 792-3773
Facsimile:   (702) 792-9002
Email: axelrodb@gtlaw.com
            swanise@gtlaw.com

Attorneys for Interested Party
L.A. PACIFIC CENTER, INC.

Electronically Filed November 11, 2009

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>    HOTELS NEVADA, LLC,<br><br>                               Debtor. | Case No.  BK-S-09-31131-BAM<br><br>Chapter 11<br><br>**L.A. PACIFIC CENTER, INC.'S EMERGENCY MOTION FOR RELIEF FROM AUTOMATIC STAY TO PERMIT (1) CONFIRMATION OF ARBITRATION AWARD, (2) FIXING OF PREVAILING PARTY FEES, AND (3) RELEASE OF CASH COLLATERAL**<br><br><u>OST REQUEST PENDING</u><br>Hearing Date:<br>Hearing Time:<br>Courtroom No.:     3<br><br>Hon. Bruce A. Markell |

LA 128,518,240v3

1

By and through its counsel, the law firm of Greenberg Traurig, LLP, L.A. Pacific Center, Inc. ("L.A. Pacific"), the predominant (and only legitimate) creditor herein hereby submits this "Emergency Motion for Relief from Automatic Stay to Permit (1) Confirmation of Arbitration Award, and (2) Fixing of Prevailing Party Fees" (the "Motion"), but not to execute upon any judgment or fee award obtained. This Motion is made and based upon section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the following points and authorities, the Declaration of Scott D. Bertzyk (the "Bertzyk Declaration") filed concurrently herewith and in support hereof, the papers and pleadings in the Court's file in the above-captioned bankruptcy case, the 362 Information Sheet attached hereto as **Exhibit A**, which is incorporated herein by this reference, together with all other exhibits and documents referred to herein, and any oral arguments of counsel the Court may entertain at the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

L.A. Pacific Center, Inc. ("L.A. Pacific") is the predominant (and only legitimate) creditor of debtors Hotels Nevada, LLC ("Hotels" or "Debtor"), and Inns Nevada, LLC ("Inns"),[1] and one of many creditors of their non-debtor owner (and alter ego), Louis Habash.[2]  L.A. Pacific's claims against Hotels have already been validated by a three-judge arbitration panel and, with one small exception, its claim amounts have been fixed at more than $144 million payable jointly and severally by Hotels, Inns and Habash.[3]  All that remains[4] is for the trial court that ordered arbitration to (i) confirm the awards already

---

[1] On November 5, 2009 (the "Petition Date"), Hotels and Inns each separately filed voluntary chapter 11 petitions, with Hotels case having been assigned Case No. BK-S-09-31131-BAM and Inns' case being assigned Case No. BK-S-09-31132-BAM. On November 10, 2009, Hotels and Inns filed a motion for an order authorizing joint administration and a consolidated caption [Docket No. 16]. Accordingly, a nearly identical motion is being filed concurrently herewith in the Inns case.

[2] The other unsecured creditors identified by Hotels and Inns are the lawyers who lead Hotels, Inns and Habash down the very path that resulted in the issuance of a more than $144 million award against them.

[3] The exception deals with the amount of additional attorneys' fees and costs to which L.A. Pacific is entitled as the prevailing party on its petition to compel arbitration. As to that issue, Hotels and Inns and their owner urged the arbitration panel to leave the task of fixing the amount of fees to be awarded to the Los Angeles Superior Court trial judge who had ordered arbitration. That motion has been filed, and is set for hearing against the non-debtor owner (Habash) on December 9, 2009.

[4] Prior to the Petition Date, L.A. Pacific propounded discovery requests upon Hotels, Inns and Habash and such remain outstanding. However, with respect to Hotels and Inns, L.A. Pacific will either bring a separate motion before this Court to

fixed by the arbitrators, and (ii) fix the amount of additional fees and costs to be awarded L.A. Pacific for its success in compelling arbitration — a task these debtors have argued should be performed only by that particular trial judge.

By this Motion, L.A. Pacific respectfully requests that this Court grant relief from the automatic stay imposed by Hotels' and Inns' bankruptcy filings to allow these things to occur. There are many reasons why this relief is appropriate.

<u>First</u>, Hotels' and Inns' bankruptcy filings plainly have been timed to delay (i) filing of a petition to confirm the arbitrators' awards, and hence (ii) entry of an inevitable judgment against them (and their owner). The Court should consider the following:

- L.A. Pacific quite literally has been Hotels' and Inns' only creditor for years, as: (i) Hotels and Inns sold their businesses to L.A. Pacific in the Spring of 2004; and (ii) ever since that sale, Hotels' and Inns' sole "business" has been litigation wrapped around perpetuating the very torts that triggered the claims now established against them. Given that the arbitrators already have put Hotels and Inns out of the "tort business," there simply is no magic to their filing for bankruptcy relief now.

- Indeed, there is no Hotels or Inns business to reorganize. Nor, so far as L.A. Pacific is aware are there any assets — now. After paying off all their creditors with the proceeds from the sale to L.A. Pacific, Hotels and Inns still had millions of dollars left over, but their owner (Habash) promptly transferred all excess to: (i) a Habash investor holding a stipulation for entry of judgment in which Habash admitted to embezzlement; and (ii) a different Habash company called ASSI, Inc. More recently — indeed, just last October — Hotels and Inns came into $50 million more by settling an inverse condemnation lawsuit against Clark County (the one asset of value they had carved out of their sale to L.A. Pacific). But, all the money left over after paying taxes and Hotels' and Inns' condemnation lawyer is gone too, with: (i) by everyone's admission, Habash diverting far more than $20 million to a witness in the arbitration against L.A. Pacific shortly before he testified; and (ii) according to Habash, the rest of the money having vanished into the ether (or his lawyers' pockets).[5]

- Finally, these bankruptcy filings come only after Hotels, Inns and Habash spent extraordinary sums attacking the arbitrators' awards and doing all they could to either prevent the arbitration from concluding or have the arbitration start over from scratch. Their efforts in this regard are chronicled more fully in the Bertzyk Declaration filed concurrently herewith. In short, they launched multiple attacks on every front but

---

convert such discovery requests into requests as allowable under Bankruptcy Rule 2004, or (ii) file separate ex parte applications for Bankruptcy Rule 2004 examination of Hotels, Inns and Habash.

[5] Hotels' and Inns' bankruptcy schedules and statements claim that they have between $100 million and $500 million in assets and between $100 million and $500 million in liabilities. <u>See</u> Debtor's Bankruptcy Schedules and Statements. L.A. Pacific can verify the latter number. At this juncture, however, the only assets held by these debtors would be avoidance claims and claims against the principals and professionals who have reduced Hotels and Inns to shells with an established $144 million liability.

bankruptcy, including (i) multiple attacks in Los Angeles Superior Court; (ii) filings with both the Nevada Supreme Court and the Nevada district court; and (iii) multiple motions to the arbitral body as well (including a motion to reopen the arbitration to take more evidence). These bankruptcy filings came only after all those efforts had been denied — and, not coincidentally, the day before L.A. Pacific was poised to file its petition to confirm the arbitrators' awards.

Putting all these things together, Hotels' and Inns' bankruptcy filings plainly were timed to achieve delay. Under far less compelling circumstances, bankruptcy courts have not hesitated to grant relief from the automatic stay to permit arbitrations to conclude and arbitration awards to be confirmed in state court. See In re Montague Pipeline Technologies Corp., 209 B.R. 295 (E.D.N.Y. 1997) (bankruptcy court remands arbitration proceeding back to state court and lifting stay in order to allow confirmation of arbitration award); C&A, S.E. v. Puerto Rico Solid Waste Management Authority, 369 B.R. 87 (D.P.R. 2007) (bankruptcy court remands action to vacate arbitration award and lifts stay to allow confirmation); Matter of Bill Heard Enterprises, Inc., 400 B.R. 806 (N.D. Ala. 2009) (lifting stay to allow arbitration to proceed to conclusion).

Second, as it so happens, the trial judge before whom L.A. Pacific's confirmation petition and fee motion are pending is the trial judge (Los Angeles Superior Court judge William Highberger) who: (i) above all others, is most familiar with the parties and their disputes; and (ii) Hotels and Inns previously have argued is uniquely situated to determine whether the arbitrators' awards should be confirmed, as well as the amount of additional fees that should be awarded to L.A. Pacific. Litigation started in Los Angeles Superior Court, before Judge Highberger over 4 ½ years ago; before sending the case to arbitration, Judge Highberger actually presided over a 16-day bench trial on Hotels' and Inns' affirmative claims against L.A. Pacific (which they had asserted as a defense to arbitration); he issued a lengthy 29-page decision that found Hotels' and Inns' claims wanting; he knows, better than anyone, the efforts expended by L.A. Pacific to obtain that order compelling arbitration (and for which fees must be fixed); and, as the trial judge to have ordered arbitration first (the Nevada Supreme Court later would follow suit), he is the judge to whom the parties consistently have turned to keep things moving forward. Given all this, Judge Highberger is uniquely suited to resolving both confirmation and fee issues, and to do so quickly and with a minimum of expense.

///

LA 128,518,240v3                                                3

<u>Third</u>, even taking Hotels' and Inns' creditor schedules at face value, L.A. Pacific's claims comprise approximately 99% of the claims against the debtors. <u>See</u> Debtor's Bankruptcy Schedules and Statements. Given this, the obvious first step to administering these bankruptcy estates is to grant L.A. Pacific relief from the automatic stay to permit confirmation — and, if Hotels and Inns feel they have a viable basis for asserting them, vacatur — proceedings to run their course, so that L.A. Pacific's claim is conclusively established.

<u>Fourth</u>, at this juncture, the slanderous *lis pendens* filed by Hotels and Inns still are clouding title to L.A. Pacific's real property and that cloud only can be removed by reducing the arbitrators' awards to a judgment to be recorded in the real property records.

For all these reasons, the Court should grant relief from the stay to permit the ministerial acts necessary to be undertaken to reduce L.A. Pacific's established claims to a judgment that can be brought back to this Court for administration. Further, L.A. Pacific seeks a comfort order from this Court confirming that it may proceed as to $482,072 in cash collateral that Hotels and Inns posted in August 2008, prior to the Petition Date, pending their appeal of Judge Highberger's April 15, 2008, order awarding L.A. Pacific $438,247.50 in fees. Bertzyk Decl., Exs. 20-21. There can be no dispute that the cash collateral is not property of the estate under Bankruptcy Code Section 541 given that title to the funds was assigned to the Clerk of the Los Angeles Superior Court (the "State Court") with (i) L.A. Pacific having a first priority lien on the funds if it defeated an appeal of the fee order, and (ii) Hotels and Inns having a contingent interest that would ripen into something more only if they prevailed on appeal. <u>Id</u>., Ex. 22. Hotels and Inns have lost the appeal, however, and the fee order is now final thereby eclipsing any contingent interest Hotels and Inns may have had in the funds in the State Court's registry. <u>Id</u>., Ex. 23. As such, the Court should permit L.A. Pacific to proceed as to such funds. <u>See</u> <u>In re Pettit</u>, 217 F.3d 1072, 1078 (9th Circuit 2000) (registry funds deposited with court as judgment security never became "property of the estate" and were not protected by automatic stay where debtors' contingent interest expired prior to commencement of their bankruptcy case).[6]

---

[6] Pre-petition, L.A. Pacific also had propounded some basic discovery, predominantly on third parties such as banks and other third parties likely to hold debtor property. L.A. Pacific requests that the Court lift the stay to permit discovery to proceed against non-debtors. Alternatively, L.A. Pacific will be happy to present a separate motion to address such discovery in greater detail.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding, as defined in 28 U.S.C. §157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. FACTUAL BACKGROUND[7]

**A. The Underlying Dispute And Events Leading Up To Arbitration.**

There is a long and tortured litigation history preceding this bankruptcy, which saw claims and disputes between these parties pass through six courts in three separate judicial systems, before arriving at their final merits forum (arbitration before a three-judge JAMS panel). A brief summary follows:

In the Spring of 2004, two companies owned and controlled by Louis Habash — Hotels and Inns — sold two Las Vegas commercial properties to L.A. Pacific for $70 million, with L.A. Pacific also agreeing to pay $5 million more in "additional consideration" to Inns upon the passing of the earliest of three specified contractual triggers (the last of which was an outside payment date of 5 years from the date of closing).[8] (In addition to being memorialized in the parties' contract, this $5 million obligation was reflected in a "Memorandum of Agreement" to be recorded in the real property records of Clark County, Nevada, against the property sold by Inns.) Bertzyk Declaration, Ex. 1 at 12-13, 22-27. After paying the $70 million purchase price and taking title to the property, L.A. Pacific promptly invested substantial sums to develop it. In less than a year, L.A. Pacific: (i) had secured entitlements (including the rights to build a casino and a high-rise hotel) that caused the value of the property to soar exponentially; and (ii) was poised to sell that property (and an adjoining parcel acquired by an affiliate from another party) for $235 million. Id., Ex. 1 at 18-20.

///

---

[7] The dispute between L.A. Pacific, Hotels, Inns and their owner has generated a voluminous record. To minimize the volume of paper before this Court, L.A. Pacific has, wherever possible, cited to the arbitrators' awards and to State Court orders establishing the facts set forth in the Bertzyk Declaration. Even though not yet confirmed, the arbitrators' awards are final for purposes of collateral estoppel. See In re Beckemeyer, 222 B.R. 318 (W.D. Tenn. 1998). **Exhibit 1** to the Bertzyk Declaration is the arbitrators' July 27, 2009, Award, which finally disposed of the parties' respective claims and defenses and fixed damages. **Exhibit 2** is the arbitrators' October 27, 2009, Award, which: (i) awarded L.A. Pacific fees and costs for its efforts in the arbitration; (ii) made minor corrections requested by L.A. Pacific to reduce the July 27 Award; (iii) confirmed the finality of the July 27 Award; and (iv) rejected various challenges the debtors and their owner had made to the July 27 Award.

[8] For convenience, Hotels, Inns and Habash are collectively referred to herein as "Habash."

L.A. Pacific kept Habash abreast of its development efforts, and Habash quickly became blinded by greed. Behind the scenes (and unbeknownst to L.A. Pacific), Habash began huddling with a "cohort of lawyers" to develop false claims to pirate back the property -- or, at the very least, extort from L.A. Pacific a portion of the profits L.A. Pacific stood to realize upon sale. The linchpin of their plan was to have Habash claim that: (i) he never had agreed to a five-year outside payment date on the $5 million in additional consideration owing to Inns Nevada; (ii) instead, the outside payment date for the $5 million in "additional consideration" was 12 months from the date of closing; and (iii) someone supposedly had defrauded him by changing that term (without his knowledge or consent) to 60 months after he had signed.[9] Based upon that story, Habash and his lawyers proposed to seek tort damages and/or rescission of their sales transaction, based on the alleged fraud. Bertzyk Declaration, Ex. 1 at 18-19.

There were earlier payment triggers, however, and L.A. Pacific was getting perilously close to achieving one of them and frustrating Habash's tortious plan. So, on May 4, 2005 — less than a year after closing (i.e., before payment was due even under his theory) — Habash sued in California for tort damages and to rescind the sales transaction (the "California Action");[10] days later, Hotels and Inns recorded lis pendens against the property he had sold to L.A. Pacific. Knowing it was going to sell the property and pay Inns the $5 million anyway, L.A. Pacific tendered the $5 million before the one-year anniversary of the closing. Habash refused the offer. Accordingly, L.A. Pacific did two basic things:

---

[9] The truth is that: (i) on the day of signing L.A. Pacific presented Habash with a demand that the outside payment date be changed to 60 months from the date of closing; and (ii) Habash had no choice but to agree to that change because he was being pressured to come up with money to pay off a judgment creditor and already had promised that creditor the bulk of a $6 million deposit he planned to get from L.A. Pacific as soon as he signed a deal. Bertzyk Declaration, Ex. 1 at 9-12 [describing how (i) Habash had been forced to give a stipulation for entry of judgment to settle a lawsuit against him for embezzling $7 million out of Inns Nevada, which could be recorded if Habash did not pay off the judgment holder on terms and in a time frame to his satisfaction, and (ii) Habash was in default, and facing the imminent threat of recordation].) Habash has denied feeling pressured, but on cross-examination ultimately admitted to agreeing to L.A. Pacific's demand. Id., Ex. 1 at 13. In other words, on cross-examination, Habash effectively admitted that his whole story had been a sham from day one.

[10] Initially, Hotels and Inns were represented by two law firms in the California Action — Bullivant, Houser & Bailey (through Las Vegas attorney Mark James) and Good Wildman Hegness & Walley (through attorney Gary Dapelo). Good Wildman/Mr. Dapelo are listed as the second largest creditor of Hotels and Inns, for having rendered legal services pursuing a baseless suit. Of the remaining firms listed by Hotels and Inns as having provided "legal services," all but one of them (the Santoro Driggs firm), were counsel in connection with the California Action and the arbitration. As for Santoro Driggs, the "services" were provided by attorney Douglas Driggs, who four judges now have found to have assisted Hotels and Inns in perpetrating a fraud upon L.A. Pacific in 2004, and to have perjured himself on Habash's behalf during the course of litigation. Bertzyk Declaration,, Ex. 1 at 9-11, 26, 32, 41-42; Ex. 3 [order compelling arbitration] at 8-9.

(i) it moved to compel arbitration of the claims asserted against it; and (ii) it moved to expunge the lis pendens. Bertzyk Declaration, Ex. 1 at 20-21.

The Los Angeles Superior Court ordered Habash's lis pendens expunged on January 3, 2006. On January 6, 2006, and in order to (i) frustrate a sale of the subject property that was then in escrow, and (ii) make and end run around that expungement order, Habash (i.e., Hotels and Inns) and a third Habash company (Silverleaf Development, LLC) filed a copycat lawsuit in Nevada state court (the "Nevada Action") and recorded still more lis pendens.[11]  Habash's actions had their intended effect, and his lis pendens fatally disrupted a $235 million sales transaction, then in escrow. Bertzyk Declaration, Ex. 1 at 21.

Meanwhile, insofar as arbitration was concerned, L.A. Pacific initially was unsuccessful obtaining an order compelling arbitration in both California and Nevada (leading to appeals in both cases), so L.A. Pacific asserted protective counterclaims in both jurisdictions (while continuing to take the position that everything should be arbitrated under Nevada law in accordance with the binding arbitration provision in the parties' written purchase agreement).  Ultimately, L.A. Pacific's counterclaims from the Nevada Action would be added to, and resolved in, the arbitration. Bertzyk Declaration, ¶ 9.

On November 7, 2006, the California Court of Appeal issued a published decision reversing an order denying L.A. Pacific's petition to compel arbitration, and remanding for an "evidentiary hearing" on Habash's affirmative defense to arbitration of "fraud in the execution." <u>Hotels Nevada v. L.A. Pacific Center, Inc.</u>, 44 Cal.App.4th 754 (Cal. App. 2006).  On May 15, 2007, in the face of certain adverse rulings against them, Hotels and Inns dismissed their California complaint without prejudice and took the position that, through that artifice, they had divested the Los Angeles Superior Court of jurisdiction to enter and enforce its discovery orders and/or to rule upon L.A. Pacific's still-pending petition to compel arbitration. Bertzyk Declaration, Ex. 3 at 2; Ex. 5 at 5.  Ultimately, Hotels' and Inns' gambit backfired, as it made them liable to L.A. Pacific for fees and costs as the prevailing party on their complaint. <u>Id</u>., Ex. 5 (8/11/09 California Court of Appeal decision affirming fee award)  Further,

---

[11] Here, Habash and his companies were again represented by the Bullivant firm, as well as by Las Vegas attorney Will Kemp and his firm (now Kemp Jones & Couthard -- another supposed unsecured creditor).

1 following a motion, the Los Angeles Superior Court ruled "that the dismissal did not moot L.A.
2 Pacific's pending petition to compel arbitration because the petition was an independent proceeding."
3 Id., Ex. 5 at 5-6. Thus, Hotels and Inns also could not escape litigating issues over arbitrability. On
4 February 1, 2008, after a 16-day bench trial on Habash's affirmative defense to arbitration of "fraud in
5 the execution," this Court ruled that Habash had failed to prove his defense and ordered the parties to
6 arbitrate. Id. Ex. 3.

**B.     Arbitration And The July 27, 2009, Award.**

8           Thereafter, the parties selected their JAMS arbitration panel and filed their respective claims.
9 The arbitration panel ("Panel") consisted of the following members: Hon. Edward J. Wallin, retired
10 California Court of Appeal Justice, Hon. John W. Kennedy, Jr., retired California Superior Court Judge,
11 and Hon. David Warner Hagen, retired United States District Court Judge (from Reno, Nevada). Hotels,
12 Inns and a third plaintiff in the Nevada Action (Silverleaf) asserted their claims against L.A. Pacific.
13 L.A. Pacific in turn asserted additional claims against Hotels, Inns and Habash (for, among other things,
14 fraud and breach of contract), which had not been asserted anywhere before and were not pending
15 before any court.

16          On October 22, 2008, the Nevada Supreme Court issued its decision on L.A. Pacific's appeal of
17 the order denying L.A. Pacific's motion to compel arbitration in the Nevada Action. (Ex. 6.) In light of
18 that decision, L.A. Pacific raised the issue of whether its Nevada counterclaims should be added to the
19 arbitration. Ultimately, Habash stipulated that the Nevada counterclaims that had been the subject of
20 L.A. Pacific's motion to compel arbitration in Nevada (which had generated the Nevada Supreme
21 Court's decision) all could be added, tried and resolved under Nevada law — provided that L.A. Pacific
22 agree that Habash could bring an anti-SLAPP motion under Nevada's anti-SLAPP statute (to which
23 L.A. Pacific agreed). Habash in turn brought a special motion to strike the Nevada counterclaims so
24 added; the motion was brought under Nevada's anti-SLAPP statute and was briefed throughout
25 December 2008. After oral argument, the motion was denied on the first day of the arbitration. Bertzyk
26 Declaration, ¶ 9; Ex. 2 at 48, fn. 30; Ex. 7.

27          Earlier this year, the parties tried their respective claims to the Panel over four weeks, pursuant
28 to Nevada substantive law and the AAA Rules for Complex Disputes as provided in the parties'

arbitration agreement. At the conclusion of the arbitration, the parties submitted extensive post-trial briefs (both opening and reply). Closing arguments were held on April 28, 2009. The Panel issued an "Interim Award" on July 27, 2009. Bertzyk Declaration, Ex. 1 ("the July 27 Award.") As the Panel later would confirm, the July 27 Award was interim only in the sense that the Panel had reserved jurisdiction to make a prevailing party fee and cost award after it had finally disposed of the liability and damage issues associated with both sides' claims (which is what the July 27 Award did). The July 27 Award was delivered to counsel that same day. In pertinent part, the Panel found and awarded as follows:

(a) Habash did not name Silverleaf as a party in his post-arbitration brief, and no evidence ever was offered on Silverleaf's behalf. Accordingly, Silverleaf and any purported claims were dismissed. Bertzyk Declaration, Ex. 1 at 1, n 1.

(b) The pivotal legal issue was what the parties had agreed to in terms of the outside payment date for the $5 million in additional consideration owing to Inns under section 2.06(b) of the parties' PSA; on that issue, Habash had in fact agreed to a 60-month outside payment date, and his claims (all of which were premised on the absence of such an agreement) were baseless. Id. at 13, 22-30, 34-35.

(c) "Plainly in the mind and actions of claimants' chief executive [Habash] the unity of interest and ownership between them was complete and inseparable. Enormous damage was done to [L.A. Pacific] in the names of claimants by their chief executive, 'such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.' Lorenz, 114 Nev. at 807. The panel finds Habash is the *alter ego* of Hotels Nevada, LLC and Inns Nevada, LLC." Id. at 37-38.

(d) On its abuse of process claim, L.A. Pacific had proven all the elements of its claims for abuse of process, slander of title, and interference with contract, including damage in excess of $140 million. Id. at 38-41 and 43-44. After corrections and offsetting $5 million otherwise owing to Inns under the parties' contract, tort damages ultimately were fixed at $140,340,000.

(e) L.A. Pacific had proven that Habash had breached the agreement to indemnify L.A. Pacific against a claim by Habash's broker, and had been damaged thereby in the amount of $31,269. Id. at 41.)

(f) On its fraud claim, claims for breaches of warranties in the parties' Purchase and Sale Agreement (PSA) and claim for breach of the PSA through assertion of a false contract term, L.A. Pacific had proven the elements of such claims, but the damages were the same as the damages caused by the abuse of process, interference and slander of title; therefore, those claims were "denied as injury without economic damage." Id. at 41-42.

(g) Habash had breached the agreement to arbitrate, but: (i) "damages for breach of the agreement to arbitrate, beyond merely duplicating respondent's tort damages, have not been shown"; and (ii) "Respondent will be awarded prevailing party attorneys' fees and costs" to compensate for the remaining damages for breach of the agreement to arbitrate, which "began to accrue" when "the motion [to compel arbitration] was filed." Id. at 42.)

(h) L.A. Pacific was entitled to declaratory relief quieting title in its favor and canceling certain instruments of record against its property. Id. at 42-43.)

(i) L.A. Pacific "has proved by clear and convincing evidence that claimants' alter ego, Habash, has been guilty of oppression, fraud and malice in committing the torts of abuse of process, slander of title and intentional interference with contract, and the panel so finds." Additional punitive damages would not be assessed, however, because "the enormous compensatory damages we award today are equally sufficient for the sake of example and by way of punishing Habash." Id. at 44-45.

Based on all the foregoing, the Panel, among other things, awarded L.A. Pacific more than $140 million in damages, and quieted title to the property in L.A. Pacific's favor.

**C.    Corrections, Fee Prove Up and Habash's Efforts To Delay Things and Attack The July 27 Award.**

On July 28, 2009, L.A. Pacific pointed out to the Panel (i) two potential typographical and mathematical errors that, when corrected (if they were, in fact, errors), would reduce the total damage award by $1,001,500; and (ii) that Habash already had paid one item of L.A. Pacific's damages (the $200,000 premium for an expungement bond). Such matters never have been in dispute; in fact, Habash gladly accepted the reductions proposed by L.A. Pacific; and, the Panel made those reductions in its last award.

Meanwhile, much as he secretly had huddled with his lawyers to develop a plan to sue L.A. Pacific at an opportune moment, Habash huddled with his lawyers once again to hatch a plan to try to unwind the July 27 Award — which Habash debuted in the days leading up to an August 28, 2009, hearing before the Panel (scheduled to entertain argument over the amount of L.A. Pacific's fees). On or about August 25, 2009, one of Habash's Nevada lawyers filed nearly identical requests with both the Nevada Supreme Court and the Nevada district court requesting that the stay previously imposed be lifted so that Habash could file a request for a "trial de novo" in Nevada district court. The requests invoked rules that were not even applicable; both failed. Bertzyk Declaration, ¶ 13.[12]

On August 27, 2009, Habash noticed an intent to present an ex parte application to the Honorable Ann Jones, a Los Angeles Superior Court judge whose sole tie to this case is that her courtroom is next door to the courtroom of Judge Highberger, who has overseen this case from its

---

[12] These services were performed by the Las Vegas law firm of Kemp Jones & Couthard, who, judging by Hotels Nevada's and Inns Nevada's creditor filings, has billed $40,000 for such tasks. Bertzyk Declaration, ¶ 31(d).

inception. That application was brought on August 28, 2009, at 8:30 a.m., and it requested an order restraining the arbitrators from doing anything further until Habash could bring a motion to invalidate the July 27 Award and obtain other relief. The request failed. Bertzyk Declaration, ¶ 14.

The next week, Habash presented the same application to Judge Highberger, and lost there, too. Confronted with a whole new cadre of Habash lawyers making attacks to buy time for the secretion of assets, Judge Highberger warned that he would consider an "OSC re potential sanctions . . . if petitioners persist with this request in Dept. 307." He further admonished that:

> Each new counsel for petitioners is each personally chargeable with complete familiarity with the entire record of this proceeding in this court, the Nevada courts, and in the arbitration, and an excuse of alleged ignorance of past proceedings will be unpersuasive to this Court. They should be aware, in particular, that <u>it is obvious on this record that Louis Habash has a verified record of secreting funds away from their proper use in violation of his fiduciary and legal duties</u>. His accountant, Harvey Bookstein, is apparently both his victim and his accomplice in doing this.

Bertzyk Declaration, Ex. 9 (emphasis added). Perhaps this was because another of Habash's attorneys (Larry Lewis of the Allen Matkins firm -- yet another supposed unsecured creditor of Hotels and Inns Nevada) submitted a declaration during the course of those proceedings attesting that, after the Los Angeles Superior Court had issued a temporary protective order restraining Habash, Hotels and Inns from moving funds out of Bank of America, the attorney had gone down to Bank of America with Habash to lobby for bank to release funds anyway. Bertzyk Declaration, ¶¶ 14-16; Ex. 10.[13]

On September 4, 2009, Habash filed with the arbitration panel a "Motion to Reopen Proceedings to Take Evidence Regarding Remedies" ("Motion to Reopen"), which was briefed over the next ten days, and then argued on September 18, 2009. The Motion was supported by a declaration of a former client of the Snell & Wilmer law firm (yet another supposed creditor of Hotels and Inns) that was demonstrably false — and, indeed, contrary to allegations that very firm had made in an earlier lawsuit over this same topic. The Panel denied that motion, too. Bertzyk Declaration, ¶ 18; Ex. 2 at 50-52.

On or about September 21, 2009, Habash filed with Judge Highberger a "Motion for Preliminary Injunction or Other Order Prohibiting Arbitration of Tort Claims Already Decided" ("Injunction Motion"). Judge Highberger denied the motion a month later, observing that Habash was "quite

---

[13] The lobbying worked. Bank of America has since confirmed that the funds are gone and accounts have been closed. Bertzyk Declaration, ¶ 17; Ex. 11.

obviously trying to use this motion as test-marketing for forum shopping as to the anticipated motions/petitions to confirm, modify or vacate the anticipated final award. This case has already traveled to and fro in the civil litigation process, and this Court sees no reason to facilitate any further forum-shopping endeavors. . . ." Bertzyk Declaration, ¶ 19; Ex. 12.

Meanwhile, before the arbitration panel formally could rule on Habash's Motion to Reopen (or the other pending matters), Habash, on September 23, 2009, wrote to formally challenge the continued participation of Arbitrator Hagen. On September 25, 2009, JAMS stayed the arbitration, pending resolution of the challenge, which was referred to a neutral. On October 5, 2009, Habash served a formal motion to disqualify Arbitrator Hagen. That motion was denied on October 27, 2009, with JAMS ordering that L.A. Pacific was entitled to an award of its fees and costs as a sanction. Bertzyk Declaration, ¶ 20; Ex. 13.[14]

Also on October 27, 2009, the Panel issued and served on the parties its "Final Award." Bertzyk Declaration, Ex. 2. Precisely because the July 27 Award already was "final" as to the parties' claims and damages, the October 27 Award does not disturb any of the Panel's prior determinations. Instead, it simply does the following: (i) as suggested by L.A. Pacific, corrections were made to reduce the damage award by $1,201,500; and (ii) L.A. Pacific was awarded an additional $3 million in fees and $759,100 in costs incurred in the arbitration proceedings. Id.

Under California's Arbitration Act, the first day L.A. Pacific could petition to confirm the October 27, 2009, Award was November 6, 2009. Hotels and Inns filed for bankruptcy on November 5, 2009. When L.A. Pacific proceeded with petitions to confirm and/or for fees against Louis Habash — who has not filed for bankruptcy and is not protected by any automatic stay — California counsel served notice of an intent to present an Ex Parte Application to Judge Highberger, on November 12, 2009, to, among other things: (i) stay proceedings against Habash; and (ii) obtain leave to file a 100-page petition to vacate in California. Bertzyk Declaration, Ex. 14. The only salient point to be drawn from this notice is that the debtors' principal is happy to resolve confirmation and vacatur issues in California.

---

[14] The firms sanctioned are Fenigstein & Kaufman, Snell & Wilmer, Allen Matkins, and Jackson, DeMarco, Tidus & Peckenpaugh — all based in California. The first three firms are listed as unsecured creditors of Hotels Nevada and Inns Nevada for their having provided these sanctionable services.

# IV.   ARGUMENT

## A.   Legal Standards.

The grounds upon which the Court may modify, terminate, condition or annul the automatic stay are set forth in Section 362 of the Bankruptcy Code, which provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section such as by terminating, annulling, modifying, or conditioning such stay--
>
> (1) for cause, including the lack of adequate protection of an interest in property of such person in interest;

11 U.S.C. § 362(d)(1). "Cause" is an intentionally broad and flexible concept that permits a bankruptcy court, as a court of equity, to respond to inherently fact sensitive situations. See In re A Partners, LLC, 344 B.R. 114, 127 (E.D. Cal. 2006) (citing In re Texas State Optical, Inc., 188 B.R. 552 (E.D. Tex. 1995)). The Ninth Circuit Court of Appeals has noted that:

> "Cause" has no clear definition that is determined on a case by case basis. In re McDonald, 755 F.2d 715, 717 (9th Cir. 1985). Where a bankruptcy court may abstain from deciding issues in favor of an imminent state court trial involving the same issues, cause may exist for the lifting the stay as to the state court trial.

In re Tuscon Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990).

To resolve these fact sensitive situations, courts consider various factors to determine whether cause exists including, *inter alia*, the movant's potential harm if the automatic stay is not terminated and the proportionality of harms from terminating the automatic stay. See In re A Partners, LLC, 334 B.R. at 127 (citing In re Milne, 185 B.R. 280 (N.D. Ill. 1995)). Twelve common factors that courts consider when deciding whether the automatic stay should be lifted to allow a creditor to continue pending litigation in a nonbankruptcy forum are derived from In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2nd Cir. 1990). However, not all twelve factors are relevant in every case nor is a court required to give each equal weight in making its determination. See In re Smith, 389 B.R. 902, 919 (D. Nev. 2008).

The twelve nonexclusive Sonnax factors are:

1. Whether the relief will result in a partial or complete resolution of the issues;
2. The lack of any connection with or interference with the bankruptcy case;
3. Whether the foreign proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

        5.     Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

        6.     Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;

        7.     Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

        8.     Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

        9.     Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

        10.    The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

        11.    Whether the foreign proceedings have progressed to the point where the parties are prepared for trial, and

        12.    The impact of the stay on the parties and the "balance of hurt."

See Sonnax, 907 F.2d at 1285 (adopting In re Curtis, 40 B.R. 795, 799-800 (D. Utah 1984)). After a movant meets its burden to show cause to lift the stay, "a stricter burden then shifts to the debtor to demonstrate that he is entitled to the stay." Goya Foods Inc., et al. v. Ulpiano Unanue-Casal, et al., 159 B.R. 90, 95 (D. P.R. 1993); see also 11 U.S.C. 362(g)(2) (stating debtor bears the burden of proving absence of cause for terminating automatic stay).

### B.    Cause Exists to Modify the Stay to Permit Confirmation of the Arbitration Award.

Factors 3, 5, 6, 8 and 9 are either neutral or inapplicable. The remaining factors (1, 2, 4, 7, 10, 11 and 12) all militate strongly in favor of granting relief from the automatic stay. Again, because (i) all L.A. Pacific seeks to do here is resolve confirmation issues, fix the amount of fees it already has been awarded, and confirm that it is entitled to proceed against cash collateral deposited with the court as security for L.A. Pacific's fees and costs pending appeal (which is not property of the estate under Section 541), and (ii) L.A. Pacific will not be executing upon any resulting judgment or orders, there can be no harm to the Debtor's bankruptcy estate in granting relief. Conversely, the harm to L.A. Pacific from delay is manifest. Indeed, given L.A. Pacific's status as the dominant (and only genuine) creditor of Hotels and Inns, resolution of these issues is the necessary and logical first step to formulating any type of bankruptcy plan for Hotels Nevada and Inns Nevada.

In sum, the debtors' principal, Louis Habash, has not filed for bankruptcy or sought any order from this Court extending the stay to him. Yet, he already is using this bankruptcy filing as a pretext to

seek a stay of proceedings against him in California. And, as established above, Mr. Habash has a demonstrated penchant for moving assets to put them beyond the reach of his creditors. Thus, every day's delay in reducing L.A. Pacific's claims to a judgment against Habash is a day in which he is allowed to work further mischief.

*Factor 1:    Whether the Relief Will Result in a Partial or Complete Resolution of the Issues.*

Granting relief from the automatic stay for the limited purposes contemplated herein will result in a complete resolution of all issues implicated by the arbitration, which addressed all claims between L.A. Pacific and Hotels and Inns, as well as their owner/alter ego, Louis Habash. Indeed, if the relief requested herein is granted for these limited purposes, the amount of L.A. Pacific's claims against Debtor will be fixed. See In re Montague Pipeline Technologies Corp., 209 B.R. 295, 306 (E.D. N.Y. 1997) (holding modification of automatic stay to continue confirmation action in state court would result in complete resolution of arbitration, allow amount of movant's claim to be fixed, result in withdrawal or denial of debtor's objection to movant's claim, facilitate debtor's Chapter 11 by allowing debtor to propose realistic plan of reorganization, and allow bankruptcy court to rely on state court's decision on debtor's liability in determining allowability of movant's claim). And, again, fixing L.A. Pacific's claims is all L.A. Pacific seeks leave to do. Once the awards are confirmed and judgment entered, L.A. Pacific will return to this Court for administration of its established claims.

*Factor 2:    The Lack of Any Connection With or Interference With the Bankruptcy Case.*

The summary State Court proceeding to confirm the Arbitration Award will not interfere with these bankruptcy proceedings; rather, as noted above, it will give finality to the Arbitration Award and help this Court in the administration and determination of Debtor's estate.[15] Moreover, lifting the stay to permit the Arbitration Award to be confirmed (and remaining fees to be fixed) will streamline the Debtor's bankruptcy proceeding by providing definite parameters to the underlying claims against Debtor, most notably that of L.A. Pacific given that Debtor's remaining creditors appear to be Debtor's litigation counsel.[16] Importantly, no prejudice will result to the bankruptcy estate by lifting the stay to

---

[15] See California Civil Procedure Code §1290.2 (allowing petition for confirmation of arbitration award to be heard in summary fashion on at least ten (10) days notice).

[16] Indeed, of the $142,400,000 in unsecured claims listed by Debtor along with its petition, $140,000,000 relates to L.A. Pacific's Arbitration Award against Debtor, with the remaining six (6) creditors being law firms that provided "Legal Services." See Debtor's List of Creditors Holding Twenty Largest Unsecured Claims.

allow the Arbitration Award to be confirmed because L.A. Pacific is not asking for authority to *execute* upon any judgment obtained.

Further, prosecution of these summary matters will not interfere with administration of the bankruptcy estates at all because, as established above, neither debtor has any ongoing business with which to interfere.  Indeed, the debtors' sole remaining business long has been litigating against L.A. Pacific, and the arbitrators have made clear that it is high time for that business to end, before Hotels and Inns inflict even more damage.

*Factor 4:    Whether A Specialized Tribunal Has Been Established To Hear The Particular Cause Of Action And Whether That Tribunal Has The Expertise To Hear Such Cases*

The Los Angeles Superior Court is not a "specialized tribunal" to hear fee motions or petitions to confirm arbitration awards; nonetheless, this particular Los Angeles Superior Court judge (Judge Highberger) does have a unique familiarity with the record in this case that is uniquely calculated to yield an efficient, accurate and just resolution of the remaining issues.  Indeed, this Los Angeles Superior Court judge is the very judge Hotels Nevada and Inns Nevada:  (i) have argued is suited to fix the remaining amount of fees and costs to be awarded to L.A. Pacific; and (ii) claim they intend to present with a petition to vacate the same awards L.A. Pacific seeks to confirm.  Bertzyk Declaration, ¶ 4; Ex. 14.

*Factor 7:    Whether the Litigation in Another Forum Would Prejudice the Interests of Other Creditors, the Creditors' Committee and Other Interested Parties.*

The summary arbitration award confirmation process set forth in the California Civil Procedure Code, which is essentially a motion followed by a hearing, will not prejudice the interests of Debtor's other creditors or any other interested parties.  Indeed, the other creditors are the Debtors' litigation counsel, and most of them will be involved in opposing confirmation.  Obviously, these lawyers will be highly motivated to try to defeat confirmation, as it is in their financial interest (as ostensible creditors) to reduce or take away L.A. Pacific's share of the asset pie.

*Factor 10:    The Interests of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties.*

Judicial economy unquestionably is furthered by granting relief from the stay for the limited purposes stated herein.  The State Court has been involved with this case for over three years, and the

substance of the arbitration, including significant discovery, motion practice, the arbitration hearing and the issuance of the final award by the arbitration panel, has been completed. L.A. Pacific was on the verge of filing its summary proceeding to confirm the Arbitration Award when Debtor filed its chapter 11 petition. Crown Heights Jewish Community Counsel, Inc. v. Fischer, 202 B.R. 341, 355 (E.D. N.Y 1996) (granting relief from stay to allow litigation to continue where great judicial resources had already been expended outside of bankruptcy court). Indeed, the hearing on L.A. Pacific's motion to confirm arbitration award, as to non-debtor parties, is currently scheduled to occur on December 9, 2009. See Bertzyk Declaration, Ex. 4.

Furthermore, it is anticipated that L.A. Pacific will submit a proof of claim in this bankruptcy case, to which Debtor will undoubtedly file an objection. Efficiency will be served by allowing the State Court to confirm the Arbitration Award as this Court's function in evaluating L.A. Pacific's claim would be "ministerial unless there are significant bankruptcy issues that require further action." In re Montague Pipeline Technologies, Corp., 209 B.R. 295, 300 (E.D. N.Y. 1997). Such limited involvement by this Court would be the most efficient use of judicial resources as it would allow this Court to focus on purely bankruptcy matters and to leave resolution of state law issues to the State Court. See id.

Finally, inasmuch as California confirmation proceedings will proceed anyway against non-debtors (Louis Habash and another Habash company), granting relief from the automatic stay will prevent duplication of effort through separate confirmation proceedings involving Hotels and Inns.

*Factor 11:    Whether the Foreign Proceedings Have Progressed to the Point Where the Parties Are Prepared for Trial.*

The advanced stage of the arbitration proceedings weighs heavily in favor of stay modification. This factor is based on the sound principal that the further along the litigation, the more unfair it is to force the movant suing the debtor "to duplicate … its efforts in the bankruptcy court." In re Fernstrom Storage & Van Co., 938 F.2d 737, 735 (7th Cir. 1991). Although the Court in Sonnax employed the word "trial," at least one court has found that it is reasonable to conclude that the true inquiry under this factor is whether the litigation in question has reached an advanced stage. See In re Montague, 209 B.R. at 306-07. While not an actual "trial," an action to confirm an arbitration award is an analogous

1  proceeding in that it results in a final judgment. See id. (citing Whirlpool Corp. v. Phillips Electronics,
2  N.V., 848 F. Supp. 474, 478 (S.D. N.Y. 1994) (noting that confirmation of arbitration award "converts a
3  final arbitration award into a judgment of the court.").

4       Here, the State Court proceeding is in its final phase, and the parties were prepared for "trial," as
5  L.A. Pacific's petition to confirm the Arbitration Award was being finalized for filing when Debtor filed
6  its chapter 11 petition. Indeed, the hearing on L.A. Pacific's motion, re-cast so as to apply only to the
7  non-debtor parties, is currently scheduled to occur on December 9, 2009. Bertzyk Declaration, ¶¶ 6, 22-
8  24; Ex. 4. Finally, the parties' readiness to complete the State Court action is further evidence of
9  "cause" to grant relief from the automatic stay and allow the confirmation of Arbitration Award action
10 to proceed. See id. at 307.

11 *Factor 12:   The Impact of the Stay on the Parties and the "Balance of Hurt."*

12      L.A. Pacific will be severely prejudiced if relief from the stay is not granted to permit resolution
13 of such maters in State Court, for reasons noted above. Most obviously, the awards are not just against
14 the Hotels and Inns; they are against non-debtors, such as Louis Habash, who: (i) already has stripped
15 Hotels and Inns of assets; and (ii) remains free to put his own assets beyond L.A. Pacific's reach. All
16 tribunals intimately familiar with proceedings in California's State Court — ranging from Judge
17 Highberger, to another superior court judge who has issued right to attach orders, to a superior court
18 commissioner who has issued a temporary protective order Habash violated, to the arbitration panel, to
19 the JAMS body that denied Habash's ill-conceived motion to disqualify — have warned of this danger.

20      There will be no prejudice to Hotels and Inns in requiring them to litigate issues in connection
21 with confirmation of the Arbitration Award in the State Court in which they chose to initiate this
22 dispute. If Hotels and Inns have a legitimate ground for vacating the arbitrators' awards, they will be
23 free to present it in State Court. And, in fact, Hotels' and Inns' owner/alter ego already has noticed an
24 intent to do just that. (Bertzyk Declaration, Ex. 14.) On the other hand, both parties will be prejudiced
25 absent modification of the stay to confirm the Arbitration Award in State Court. The parties have spent
26 over three (3) years litigating this case, including over a year before the arbitration panel. The parties
27 have expended considerable time and expense associated with that process. Indeed, L.A. Pacific has
28 twice presented evidence to support its claims and defenses, prevailing both times. Both evidentiary

processes were protracted and detailed, each taking place over the course of several weeks. Finally, the improper lis pendens filed by Hotels and Inns, which already have been determined to slander title to L.A. Pacific's property, can be expunged only through reducing the arbitrators' awards to judgment and recording that judgment in the real property records. Every day that goes by with L.A. Pacific's title being clouded is, quite literally, another day of tort damage inflicted by Hotels and Inns and their owner.

### C. The Cash Collateral Posted by Hotels and Inns is not Property of the Estate.

Finally, L.A. Pacific seeks a comfort order from this Court confirming that it may proceed as to $482,072 in cash collateral that Hotels and Inns posted in August 2008, prior to the Petition Date, pending their appeal of Judge Highberger's April 15, 2008 order awarding L.A. Pacific $438,247.50 in fees. Bertzyk Decl., Exs. 20-21. There can be no dispute that the cash collateral is not property of the estate under Bankruptcy Code Section 541 given that title to the funds was assigned to the Clerk of the State Court with (i) L.A. Pacific having a first priority lien on the funds if it defeated an appeal of the fee order, and (ii) Hotels and Inns having a contingent interest that would ripen into something more if they prevailed on appeal. Id., Ex. 22. Hotels and Inns have lost the appeal, however, and the fee order is now final thereby eclipsing any contingent interest Hotels and Inns may have had in such funds. Id., Ex. 23. Accordingly, the Court should permit L.A. Pacific to proceed as to such funds. See In re Pettit, 217 F.3d 1072, 1078 (9th Cir. 2000) (registry funds deposited with court as judgment security never became "property of the estate" and were not protected by automatic stay where debtors' contingent interest expired prior to commencement of their bankruptcy case).

### V. CONCLUSION

WHEREFORE, for the foregoing reasons, L.A. Pacific respectfully requests that the Court enter an Order (a) granting this Motion in its entirety, (b) modifying the automatic stay to permit the State Court to (i) confirm the awards already fixed by the arbitrators, and (ii) fix the amount of additional fees and costs to be awarded L.A. Pacific; and (c) granting such other relief as is just and proper.

DATED this 11th day of November 2009.

**GREENBERG TRAURIG, LLP**

By        */s/ Brett A. Axelrod*
      BRETT A. AXELROD (NV Bar No. 5859)