

**Entered on Docket
September 27, 2010**

_____
**Hon. Bruce A. Markell
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re:<br><br>HOTELS NEVADA, LLC<br>INNS NEVADA, LLC,<br><br>                    Debtors. | Case No.: BK-S-09-31131-BAM<br>Case No.: BK-S-09-31132-BAM<br><br>Jointly Administered Under<br>Case No.: BK-S-09-31131-BAM<br><br>Chapter 7<br><br>Date: June 29, 2010<br>Time: 10:00 a.m. |

**ORDER ON FEES**

**I. INTRODUCTION**

    Quarles & Brady LLP ("*Quarles*") has requested that the court approve $803,418 in fees and $77,448.24 in costs for its work as debtors' counsel on these cases. As explained below, because most of the time that Quarles billed in connection with these cases was for services not reasonably likely to benefit the debtors or their estates at the time the services were rendered, the court will disallow $763,542.52 in requested fees and $73,575.83 in requested costs. It will allow $39,875.48 in fees and $3,872.41 in costs.

**II. FACTS**

    These cases were filed on November 5, 2009 under chapter 11, with Quarles serving as debtors' counsel. These cases are related to a disputed commercial transaction with L.A. Pacific

Center, Inc., and these cases were filed after the debtors and the former principal and alleged alter-ego of the debtors, Louis Habash ("**Habash**"), lost an arbitration in California. But "lost" is not an adequate word; as a result of their behavior in that transaction, an arbitrator in California assessed $141 million in damages against the debtors and Habash. As part of the debtors' filings, Quarles was given a retainer by another company Habash controlled of about $800,000 for application to any fees incurred in these cases.

Quarles stated in its fee application that the rationale for filing these chapter 11 cases was to "create[] a platform for the orderly administration of the [arbitration] Award" and to "afford[] time for the Debtors to evaluate affirmative claims owned by the estate" against the professionals whom the debtors blamed for their plight. The debtors have maintained that their former, prepetition, counsel committed professional malpractice with regard to the arbitration proceeding, causing the high amount of the award and thus damages to the debtors. Dkt. No. 261. This potential malpractice claim was the only asset listed on either debtors' schedules.

At the time the cases were filed, the court expressed surprise that these cases were filed under chapter 11, remarking that each looked like a chapter 7 "waiting to happen." Indeed, at the request of L.A. Pacific Center, Inc. (the prevailing party in the California arbitration, and thus a creditor of the debtors), the court converted the cases to ones under chapter 7 on February 25, 2010. At the conversion hearing, the court found that Quarles had not acted in good faith in initiating the cases and that the filings had not been made in good faith. The conversion orders have not been appealed.

On April 29, 2010, Quarles filed its First Interim Application for Allowance and Payment of Interim Compensation and Reimbursement of Expenses. Dkt. No. 261. Quarles requested the court approve a total of $803,418 in fees and $77,448.24 in costs for its work on these cases. Of the total fee request, $593,388.50 was billed for "Litigation/Other Contested Matters," which was simply a fancy and vague way of describing efforts to attack the arbitration award.

2

As Quarles detailed in the exhibits accompanying its fee application, this $593,388.50 was incurred over the course of 1,967.4 hours of work on matters such as "litigation" "associated with the [arbitration] Award" and by the "review and analysis of claims in order to object to unwarranted claims." Dkt. No. 261, pg. 7-8. Quarles asserted that the nearly 2,000 hours of work was justified because "the Debtors' estates were burdened with enormous claims for which the only hope of recovery was further litigation claims against [the] professionals" who had lost the arbitration proceeding in California. Quarles also spent "[e]xtensive time . . . reviewing the record and then undertaking analysis of both the substantive and procedural issues relating to the allowance" of the arbitration award. Dkt. No. 261, p. 11.

Despite this impressive investment of time, there were no results. Quarles never filed any actions against the purportedly negligent professionals; it undertook no successful "litigation matter[s]" against any party; and otherwise did nothing to bring any value into the estate. Moreover, because the case has been converted to a chapter 7, Quarles can not, and could not, "administer" the award in any capacity.

Quarles' fee application was opposed to various degrees by L.A. Pacific Center, Inc. and by the attorney for the chapter 7 trustee. The court held a hearing on Quarles' fee application on June 29, 2010 and, after post-hearing briefing, took the matter under submission on July 20, 2010.

## III. STANDARD FOR COMPENSATION

Quarles was retained by the debtor-in-possession pursuant to 11 U.S.C. § 327(a). Quarles therefore appropriately sought compensation in accordance with the provisions of 11 U.S.C. § 330, which permits the court to award fees and expenses to a professional employed under Section 327.

Section 330 states:

>  (a)  (1) After notice . . . and a hearing . . . the court may award to . . . a professional person employed under section 327 . . . —
> (A) reasonable compensation for actual, necessary services rendered by . . . professional person, or attorney . . . and
> (B) reimbursement for actual, necessary expenses. . . .

>    (3) In determining the amount of reasonable compensation to be awarded to a[] . . . professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including— . . .
>        (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered. . . .
>    (4)    (A) Except as provided in subparagraph (B), the court shall not allow compensation for—
>            (i) unnecessary duplication of services; or
>            (ii) services that were not—
>                (I) reasonably likely to benefit the debtor's estate; or
>                (II) necessary to the administration of the case.

11 U.S.C. § 330.

The Ninth Circuit Court of Appeals has indicated that the Section 330 assessment can be facilitated by answering the following questions:

> First, were the services authorized? Second, were the services necessary or beneficial to the administration of the estate at the time they were rendered? Third, are the services adequately documented? Fourth, are the fees requested reasonable, taking into consideration the factors set forth in § 330(a)(3)? Finally, [did] the professional exercise[ ] reasonable billing judgment[?]

*Leichty v. Neary (In re Strand)*, 375 F.3d 854, 860 (9th Cir. 2004); *see also Ferrette & Slater v. United States Trustee (In re Garcia)*, 335 B.R. 717, 723-25 (B.A.P. 9th Cir. 2005).

The Bankruptcy Appellate Panel for the Ninth Circuit has explained that "the question governing attorney compensation should be whether services were necessary or beneficial at the time at which the service was rendered." *In re Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Co. (In re Mednet)*, 251 B.R. 103, 107 (B.A.P. 9th Cir. 2000) (affirming the bankruptcy court's disallowance of $277,734.02 out of $602,078.47 in requested fees "as unauthorized, duplicative, unnecessary, or not reasonably likely at the time they were rendered or incurred to benefit the Debtors' estate."). In practice, this means that "[t]he statute does not require that the services result in a material benefit to the estate in order for the professional to be compensated; the applicant must demonstrate only that the services were reasonably likely to benefit the estate at the time the services were rendered." *Id; See also* 3 COLLIER ON BANKRUPTCY ¶¶ 327.03[3][c], 330.03[s][a][2] (Alan N. Resnick & Henry J. Sommer eds., 16th rev. ed. 2010).

## IV. QUARLES' UNREASONABLE CONDUCT IN THIS CASE

Each of these authorities makes it clear that determining the reasonableness of a professional's compensation requires the court to consider the totality of the circumstances. Here, the totality of the circumstances demonstrates that Quarles undertook actions not "necessary or beneficial at the time at which [they were] rendered" nor "reasonably likely at the time they were rendered . . . to benefit the debtors' estate." Rather, Quarles acted in a manner that could only be expected to benefit *nondebtor* parties primarily, and the estate incidentally. Given the lack of good faith in the filing, as well as the clear favoritism shown to the nondebtors, there was never any reasonable expectation the estate would be the primary beneficiary of Quarles' actions.

To repeat, the debtors had no operations to restructure, and their liabilities consisted only of minor unpaid bills and the substantial outstanding arbitration award. Despite this, Quarles filed for relief under chapter 11. While chapter 11 provides for liquidating plans of reorganization under 11 U.S.C. § 1123(a)(5)(D), the court noted at the start of the case that this matter was a chapter 7 "waiting to happen." When it converted these cases to chapter 7, the court found that the cases had not been filed in good faith. The actions Quarles took in attempting to collaterally attack the arbitration award were clearly at the instigation and instruction of Habash, the alleged alter-ego of the debtors and the person jointly liable for the $141 million arbitration award. Indeed, the timesheets Quarles submitted are replete with references to conferences with Habash and his other counsel. From the perspective of Quarles this may have been an understandable action, as it was Habash, through an affiliated company, who paid the debtors' retainers to Quarles. However, these actions are not understandable from the perspective of the estate. *See In re Anchorage Nautical Tours*, 145 B.R. 637, 643 (B.A.P. 9th Cir. 1992) ("the debtor in possession has the same fiduciary duties and liabilities as a Trustee. When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors . . . ).

That Quarles failed to act in the best interests of the estate is supported by an examination of Quarles' actions regarding the sole asset listed in the debtors' schedules – the malpractice claim against the professionals who the debtors allege were responsible for losing the California arbitration. As Quarles acknowledged in its fee application, these malpractice claims were the only asset held by the estate, and "the [estates'] only hope of recovery." Yet Quarles utterly failed to make any material progress toward turning these claims into tangible and beneficial assets of the estate. It is true that Quarles billed around 70 hours on matters relating to possible malpractice claims, or about 3.9% of the time spent on "Litigation/Other Contested Matters." However, this relatively paltry amount of time was spent researching case law and writing memos.[1] Conspicuously lacking from Quarles' bill was any indication of progress made toward actually suing the alleged wrongdoers or collecting on these claims. No meetings or negotiations were held with these lawyers or their insurance carriers. No investigation appears as to whether these professionals had sufficient insurance or assets to meet the claim. No demand letters were sent. Perhaps Quarles' research and memo writing revealed there was no colorable or practicable malpractice claim. If this was the case, there was no need for them to futilely churn over another 2,000 hours. Either way, Quarles only spent a fraction of its time on "the only hope of recovery," for the estate, and the little time it did spend on those efforts was useless, yielding absolutely no results.

Quarles also spent significant time reviewing the record of the prior proceedings. To be sure, it was not unreasonable for Quarles to review the record of the prior proceedings to determine how to proceed in this case, or to think at the outset there were grounds for relief in this bankruptcy. However that review should have quickly and unequivocally demonstrated to Quarles that any

---

[1] Sample time entries include: "Look at research to date on malpractice settlement issues and discuss further research needed;" "Continue researching whether, under bankruptcy law, a chapter 11 debtor's assignment of a prepetition legal malpractice claim to a liquidating trust, pursuant to a chapter 11 plan, limits the trustee's recovery of damages;" and "Draft memorandum regarding malpractice damages and the effect of a settlement or a stipulated judgment on the damages calculation."

further action aimed at overturning the arbitration award would be duplicative, unnecessary, and not reasonably likely at the time rendered to benefit the Debtors' estates, especially after the court's warning about the proceeding at its outset.  *See In re Mednet*, 251 B.R. at 107.

Thus, Quarles billed the estate for matters that could not reasonably be construed as progress toward collecting on any possible malpractice claim, each estate's only asset.  Moreover, after a quick review of the record, it should have been readily apparent to Quarles that any further collateral attacks on the arbitration award would not benefit the debtors' estates.  Therefore, the court finds any amount of time Quarles spent above 100 hours to be duplicative, unnecessary, and not likely to benefit the debtors' estates at the time rendered.  This 100 hours of allowed time is approximately 12½ full days.  Even assuming Quarles undertook nine full days (or over 70 hours) of book research on any possible malpractice claim, three to four days of time remained with which to evaluate the futility of proceeding with the chapter 11 case or attacking the arbitration award.  As a benchmark for the reasonableness of this activity, note that it took the court significantly less than three full days to conclude that chapter 11 was not a good faith alternative for the debtors and efforts undertaken to fight the arbitration award served only non-estate interests.

Because the court has determined that any time Quarles spent on "Litigation/Other Contested Matters" above 100 hours was unnecessary, and because it should have been apparent to any reasonable attorney that additional time was not reasonably likely to benefit the debtors' estates, the court disallows from Quarles' fees the unnecessary 1,876.4 hours of time they spent on "Litigation/Other Contested Matters."  As Quarles charged a blended rate of $301.61 per hour for these services,[2] the court will allow the first $30,161.00 in fees for that time category and disallow the remaining $563,227.50.

---

[2] Quarles spent 1,967.4 hours on "Litigation/Contested Matters" and billed $593,388.50.  593,388.50 divided by 1,967.4 yields a blended rate for all professionals of $301.61 per hour billed.

7

The court will also disallow the costs needlessly incurred in pursuing the "Litigation/Other Contested Matters." As Quarles did not specify how much of the $77,448.24 in costs were attributable to these unnecessary actions, the court will reduce the costs by the same percentage reduction by which Quarles' fees have been reduced. The percentage of overall fees attributable to "Litigation/Contested Matters" is 74%.[3] The court has disallowed 95% of those fees, and will similarly disallow 95% of the costs attributable to "Litigation/Contested Matter." This means the court will allow $2,865.59 in costs for "Litigation/Contested Matters" and disallow $54,455.11.

## V. OTHER FEES

Quarles billed another 644.7 hours, or $210,024.50, on seven additional categories of expenses. Quarles quantified these as: case administration (304.3 hours); statements and schedules (38.1 hours); relief from stay/adequate protection proceedings (144.4 hours); representing the debtors at the 341 meeting (3.8 hours); fee/employment application (104.3 hours); fee/employment objections (39.4 hours); business operations (2.8 hours); and plan and disclosure statement (7.6 hours).

Initially, the court notes that Quarles double billed for preparing statements and schedules. In the "case administration" category, Quarles' fee application declares "the Quarles Firm has been very active in all aspects of case management . . . including, but not limited to, the statements and schedules." Dkt. No. 261, p. 8. And yet Quarles billed another 38.1 hours in its "statements and schedules" category, declaring "the Quarles Firm assisted and advised the Debtors with respect to the preparation and filing of Statements and Schedules." Dkt. No. 261, p. 9. This double-billed 38.1 hours will therefore be wholly disallowed.

Next, Quarles spent 133.7 hours, across two categories, preparing its employment and fee applications and responding to creditors' objections to its employment. Given the court's findings

---

[3] Or $593,388.50 out of $803,418 total billed.

about the nature of these cases and Quarles' behavior while serving as debtors' counsel, the court will allow only the reasonable amount of time it takes to prepare an employment application. Based on its extensive experience with other fee applications filed with this court, the court finds four hours to be a reasonable amount of time in this case. The remaining 129.7 hours in these two categories will be disallowed. It is absurd for Quarles to be compensated for preparing a bill for services that were not reasonable likely to benefit the debtors' estates when rendered or were incurred to fend off a challenge to their futile representation of the debtors.

Conversely, the court will allow all of Quarles' time for representing the debtors at the 341 meeting of creditors, or 3.8 hours ($1,896.00). Dkt. No. 261, p. 7. This was early in the case and before Quarles should have been aware of the futility of the "reorganization" efforts.

That leaves 480.7 hours spread across the remaining categories for the court to evaluate. As noted above, Quarles understood that the only hope of recovery for the debtors' estates was to pursue the malpractice claims against the professionals who represented the debtors in the California arbitration proceeding. Consequently, all the actions Quarles undertook in these cases were both incidental to and a corollary of that false hope of recovery. However, as noted above, the court has found that 95% of the time Quarles spent on the malpractice actions (in the "Litigation/Other Contested Matters") was not reasonablely likely to benefit the debtors' estates at the time rendered. As the reorganization efforts hinged on these malpractice actions, these fees became unnecessary once Quarles was or should have been aware that the malpractice claims were unlikely to be recovered, making the reorganization attempts futile. Thus, it stands to reason that just as 95% of the time spent by Quarles on the malpractice claims was unnecessary, so too was 95% of the remaining 480.7 hours. Therefore, Quarles' fees for the remaining 480.7 hours of time spent as a corollary to "the hope of recovery" will also be reduced by 95%, or 456.7 hours. Twenty-four hours

9

will be allowed. Quarles charged an overall blended rate of $325.77 for this time,[4] and so will be awarded $7,818.48 for this 24 hours of allowed time. Quarles' remaining expenses will similarly be reduced by 95%, and expenses will be allowed in the amount of $1,006.83.

## VI. CONCLUSION

Quarles requested $803,418 in fees and $77,448.24 in costs for its work on these cases. As discussed above, most of the services were not reasonably likely to benefit the debtors or their estates at the time rendered. Therefore, the court hereby disallows $763,542.52 in requested fees and $73575.83 in requested costs. Quarles is hereby allowed $39,875.48 in fees and $3,872.41 in costs for its work in this matter.

Copies sent to:

BNC MAILING MATRIX

BRETT A. AXELROD on behalf of Creditor L.A. PACIFIC CENTER, INC.
baxelrod@foxrothschild.com, pkois@foxrothschild.com; rdittrich@foxrothschild.com; ldupree@foxrothschild.com

MARJORIE A. GUYMON on behalf of Debtor HOTELS NEVADA, LLC
bankruptcy@goldguylaw.com, selenav@goldguylaw.com;ldeeter@goldguylaw.com

HOWARD C. KIM on behalf of Trustee DAVID ROSENBERG
howard@hkimlaw.com

DAVID A. ROSENBERG
darosenberg@7trustee.net, nv23@ecfcbis.com

BRIAN SIROWER on behalf of Debtor HOTELS NEVADA, LLC
brian.sirower@quarles.com, jason.curry@quarles.com;sybil.aytch@quarles.com

ERIC W. SWANIS on behalf of Creditor L.A. PACIFIC CENTER, INC.
swanise@gtlaw.com, barberc@gtlaw.com;;lvlitdock@gtlaw.com

---

[4] Quarles spent 2,612.1 hours on this matter, and billed $803,413.

1
2  U.S. TRUSTEE - LV - 11
   USTPRegion17.lv.ecf@usdoj.gov
3
4  U.S. TRUSTEE - LV - 7
   USTPRegion17.LV.ECF@usdoj.gov
   300 LAS VEGAS BLVD., SO.
5  SUITE 4300
   LAS VEGAS, NV 89101
6
7
8                                    # # #
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
                                      11