Entered on Docket
September 14, 2011

_____

**Hon. Bruce A. Markell**
**United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:                              )
                                    )
                                    )   Case No.: BK-S-09-31131-BAM
HOTELS NEVADA, LLC;                 )   Case No.: BK-S-09-31132-BAM
INNS NEVADA, LLC,                   )
                                    )   Jointly Administered Under Case No.:
                    Debtors.        )   BK-S-09-31131-BAM
                                    )
                                    )   Chapter 7
                                    )
                                    )   Date of Hearing:   August 31, 2011
                                    )   Time of Hearing:   1:30 p.m.
                                    )   Courtroom:         3
_____)

**Opinion on Trustee's Turnover Motion**

**Table of Contents**

I.    Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
      **A.**   *Section 542(e) and Privilege* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      **B.**   *Governing Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      **C.**   *Does a Joint-Client Privilege Exist?* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      **D.**   *Analysis if the Joint-Client Privilege Applies* . . . . . . . . . . . . . . . . . . . 16
             1.   *Did SDW Satisfy Its Burden to Show the Joint-Client Privilege Applies to the*
                  *Items?* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
             2.   *If SDW Has Established Applicability of the Joint-Client Privilege, Did It*
                  *Sustain Its Burden With Respect to Each Item on the Privilege Log?* . . . . . . 20
                  a.   **Billing Statements Sent Care of APH** . . . . . . . . . . . . . . . . 20
                  b.   **Seven Pages of Handwritten Notes by a SDW Associate**
                       **Attorney** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                  c.   **Five page typewritten memorandum, dated April 13, 2005,**
                       **by SDW associate attorney to Driggs** . . . . . . . . . . . . . . . 22
                  d.   **Post-May 2005 E-mails and Attachments Sent by Driggs to**
                       **Habash, APH, And/Or Their Litigation Counsel** . . . . . . 22

III.  **Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

_____

**Opinion on Trustee's Turnover Motion**

BRUCE A. MARKELL, Bankruptcy Judge:

In this jointly-administered case, debtors and their nondebtor affiliates received prepetition legal representation from one law firm. The chapter 7 trustee for each debtor now seeks turnover of information from that firm about its representation of the debtors. The firm, however, resists. On behalf of the affiliates, it asserts that the debtors and their affiliates were joint-clients, and that the information sought is subject to the attorney-client privilege. The court finds that the joint-client principles do not apply to protect the information from disclosure. Even if such principles apply, however, the firm's conduct and its manner of identifying and disclosing the alleged privileged material has waived any privilege that might have existed. The court thus orders the law firm to turn over all information claimed to be privileged.

**I.    Facts**

The debtors filed chapter 11 bankruptcy on November 5, 2009, after they and their former principal and alleged alter-ego, Louis Habash ("Habash"), lost an arbitration in California. But "lost" is not an adequate word; the arbitration award assessed over $144 million in damages against the debtors and Habash.

At the request of L.A. Pacific Center, Inc. ("LAPC"), the prevailing party in the California arbitration, and thus a creditor of the debtors, the court converted the chapter 11 cases to ones under chapter 7 on February 25, 2010. At the conversion hearing , the court found that the debtors' bankruptcy filings had not been made in good faith. The conversion orders have not been appealed. David Rosenberg was appointed as the chapter 7 trustee in each case ("Trustee").

This matter involves the Trustee's request for turnover of documents and other items held by debtors' former law firm, Santoro, Driggs, Walch, Kearney, Holley & Thompson ("SDW"). In particular, the Trustee has scheduled an examination under Rule 2004, and has issued a subpoena for all documents held by SDW in several broad categories, but all of which relate to work done by SDW for debtors. With respect to an unspecified number of

items, SDW claimed the attorney-client privilege on behalf of Habash and his wholly-owned management company, A.P.H., Inc. ("APH").  Understanding this claim requires a brief review of some facts.

Debtors, acting through their principal Habash, sold two pieces of Nevada real property to LAPC in 2004.  SDW represented debtors in the transaction. The agreement required LAPC to make a later payment of $5 million.  A disagreement arose after closing as to whether the later payment was due within 12 or 60 months. On May 5, 2005, less than twelve months after the closing, the debtors (and not Habash or APH), represented by someone other than SDW, filed a complaint for rescission, among other claims, against LAPC in California state court.[1]

LAPC filed counterclaims, claiming breach of contract.  Its damages included a claim for lost profits because the litigation with debtors caused it to lose a sale of the property to a third party.  The matter was sent to arbitration, in which LAPC prevailed on its counterclaims.  The arbitration panel issued a final award on October 29, 2009, awarding LAPC a total of $144,130,369 in damages, fees, and costs.  The debtors filed bankruptcy soon thereafter.

While arbitration was pending, debtors settled an inverse condemnation action they had brought against Clark County, the jurisdiction in which the property was located, for a taking of air space.  SDW provided an opinion letter to Clark County about debtors and LAPC's relative rights under their purchase agreement.  Clark County then settled with debtors and, on October 6, 2008, paid debtors $50 million, of which debtors netted $40 million after attorney fees.  LAPC attempted, without success, to enjoin debtors from transferring or using the settlement funds. The Trustee believes that the settlement funds were transferred to entities under Habash's control.

Against this background, the Trustee began to collect documents to build a financial picture of the debtors, in part to assess whether there were any avoidance actions available to

---

[1]The debtors (and not Habash or APH) also filed an almost identical complaint in Nevada state court, adding a quiet title action and filing another lis pendens.  The focus of the litigation between the parties, however, remained the California arbitration proceeding.

augment the estates.  In August 2010, the Trustee requested that SDW deliver all its files with respect to the debtors.  This request was made under Section 542 of the Bankruptcy Code, based on the allegation that such files were property of the debtors' bankruptcy estates under Section 541(a).

SDW did not promptly respond.  In February 2011, the Trustee sought and obtained an order from this Court for an examination of SDW under Rule 2004.  In connection with that order, the Trustee also caused the issuance of a subpoena for certain classes of documents related to the debtors.  In particular, the Trustee requested:

- Engagement letters for Debtors, including any documentation regarding the scope or limitation of the representation;[2]

- Billing statements for work done on behalf of Debtors related to the sale of the property, subsequent litigation and arbitration, and the settlement with Clark County;

- All documents, correspondence, memoranda, and other documentation related to the sale, litigation and arbitration, and settlement with Clark County, including but not limited to communications between the Santoro Firm and any of Debtors' other counsel in the litigation/arbitration; and

- Any and all documents related to the transfer of any assets belonging to Debtors.

Procedural skirmishes ensued, none of which are particularly relevant to the resolution of this motion.  While some documents were produced, not all were.  On August 5, 2011, SDW, through independent counsel, refused to produce various documents, and instead

---

[2]Paragraph 10 of the Driggs Declaration states: "To the best of my knowledge, SDW does not possess any retention agreements with Mr. Habash, APH, Debtor Hotels Nevada, LLC or Debtor Inns Nevada, LLC."

produced a privilege log.[3]  Believing that log insufficient and the claim of attorney-client privilege to be unsustainable, the Trustee, on shortened time and with the prior consent of SDW, brought this motion requiring SDW to turnover the documents listed on the privilege log.[4]

SDW responded that Section 542(e) permits it to decline to turnover items which are subject to an applicable privilege.  It has rested on its privilege log and the declaration of J. Douglas Driggs ("Driggs Declaration").  Driggs was SDW's primary contact with Habash and his related entities.  Among other things, the Driggs Declaration confirms that SDW represented the debtors and that its representation of Habash and his related entities terminated in February 2010.

---

[3]The invocation of the attorney-client privilege was necessitated by a March 14, 2011 letter from Kathleen Baxter-Walker, an attorney not affiliated with SDW, to SDW's outside counsel.  In that letter, Ms. Baxter-Walker stated that she represented Mr. Habash, and that "Mr. Habash does not waive his attorney-client privilege and objects to [SDW's] production of files and records protected by the attorney-client privilege."  Ms. Baxter-Walker was served with the Trustee's motion, and never filed anything in response.  Counsel for SDW represented at the hearing that she was similarly unresponsive to telephonic requests for instructions or clarifications of the March 14 letter.
As Ms. Baxter-Walker did not invoke any other privilege, such as the attorney-work product privilege, and since SDW did not brief the applicability of any other privilege, all other potential privileges other than the attorney-client privilege are deemed waived or inapplicable, and will not be analyzed.

[4]The Trustee captioned the motion as "*Motion for Order to Compel Santoro, Driggs, Walch, Kearney, Holley & Thompson to Turnover Property of the Estates and Recorded Information Relating to Debtors' Property or Financial Affairs and for Order to Show Cause Why Sanctions Should Not Be Imposed.*"  The Trustee had previously sought the information through an examination under Rule 2004.  Given the nature of the Trustee's turnover motion as a contested matter governed by Rule 9014, the better procedure would have been to depose SDW under Rule 7026.  *See* Rule 9014(c) (making Rule 7026, among other rules, applicable to contested matters).  That error is harmless here, however.  *See* note 11, *infra*.  This is especially true since the Trustee sought to obtain the documents through a subpoena served on SDW, which is the identical process the Trustee would have had to have used if he had proceeded by deposition under Rule 7026.
This opinion grants the relief requested by the motion but for the request for sanctions.  That part of the motion is denied without prejudice to the Trustee filing a renewed sanctions motion at a later time.

The context for this dispute is unlike most privilege disputes.  Here, no third party seeks access to a confidential communication between a lawyer and her client.  Rather, a successor to a client – here, the Trustee – is attempting to gain access to its property, or information related to its property, from its former attorney, all as authorized by Section 542.  The analog would be if two corporations hired the same attorney for a common task, and then one of the corporations had a change in management, and new management wanted all its old files to give to a new attorney only to be told "no" by the old attorney.

## II.    Analysis

### A.    Section 542(e) and Privilege

The Trustee seeks turnover of estate property, and information related to estate property.  Section 542(e) gives him that right.  Section 542(e) states:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

There is no doubt that SDW represented the debtors and that it holds recorded information about them.  There is also no doubt that under Nevada law, which governs the property rights here, that clients such as the debtors have a property right in their attorneys' files.  Nevada law provides that the file amassed by an attorney in representing a client belongs to the client.  *See* NEV. REV. STAT. § 7.055.[5]  Moreover, under the broad scope of § 541, even

---

[5]NEV. REV. STAT. § 7.055 provides in relevant part:

> 1. An attorney who has been discharged by his or her client shall, upon demand and payment of the fee due from the client, immediately deliver to the client all papers, documents, pleadings and items of tangible personal property which belong to or were prepared for that client.

Even if the files were not property of the estate, that would not be fatal to the Trustee's claim.  Although an action for turnover under § 542(a) requires that the information requested be property of the estate, there is no such requirement in § 542(e).  Section 542(e) extends to "recorded information . . . relating to the debtor's property or financial affairs."  Therefore, whether the files constitute property of the estate is irrelevant to the determination of whether turnover is proper under § 542(e).  *Am. Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re American Metrocomm Corp.)*, 274 B.R. 641, 652 (Bankr. D. Del. 2002).

attorney notes and research memoranda that were prepared in representing the debtors are property of the estate. *See Rushton v. Woodbury & Kesler, P.C. (In re C.W. Mining Co.)*, 442 B.R. 44, 47 (Bankr. D. Utah 2010) ("As a matter of law, documents prepared while representing a debtor-corporation are property of the estate, as are documents, records, or papers relating to property of the estate.").

Section 542(e), however, does qualify the Trustee's powers. The ability to compel turnover is "[s]ubject to any applicable privilege." Here, SDW is asserting the privilege of a nondebtor in the files and items. This is not, however, the situation Congress had in mind when qualifying the turnover obligation. Section 542(e)'s legislative history suggests that it "was designed to prevent attorneys and accountants from coercing debtors to pay claims in full ahead of other creditors." *In re Norsom Med. Ref. Lab., Inc.*, 10 B.R. 165, 168 (Bankr. N.D. Ill. 1981); H. REP. NO. 95-595, at 369-70 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6325-26; S. REP. NO. 95-989, at 84 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5870. *See Am. Metromcomm Corp. v. Duane Morris & Heckscher LLP (In re American Metromcomm Corp.)*, 274 B.R. 641, 652 (Bankr. D. Del. 2002); *In re Highland Park Assoc. Ltd. P'ship.*, 132 B.R. 358, 358 (Bankr. N.D. Ill. 1991).

Even though the purpose does not match the case before the court, the words do. But before applying the statute, the court must determine the source of the "applicable privilege."

**B.    *Governing Law***

Rule 501 states:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED R. EVID. 501. In this case, this standard might appear difficult to apply. Initially, it could be said that federal law applies the rule of decision. The trustee seeks to recover property of

the estate, a term defined by a federal statute, 11 U.S.C. § 541.  But that section itself is almost completely dependent upon state law; it defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case," a concept wholly derivative of nonbankruptcy law.  *Butner v. United States*, 440 U.S. 48, 54-55 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law . . . .  Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").  *See also Travelers Cas. & Surety Co. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007).  In this case, that nonbankruptcy law is Nevada state law, which controls title to the documents and papers the trustee seeks.

But no party disputes that the documents sought were the debtors' property under Nevada state law, and thus are now property of the estates under Section 541(a).  What is contested is whether third parties – Habash and APH – also have rights under nonbankruptcy law in the property sought to be turned over, and whether those rights are protected by the attorney-client privilege.  Into this mix is another factor: in addition to estate property such as the debtors' records, which would belong to the trustee under Section 541(a), Section 542(e) also requires turnover of any "recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs . . . ."

The trustee thus seeks the documents under both Section 541(a) and Section 542(e), presenting a mix of governing law; federal law as to the Section 542(e) issues, and Nevada law as to the ability of Habash to block turnover of co-owned property by invoking the attorney-client privilege.  In such circumstances, federal law applies to sort out the nondebtor's ability to stymie the return of debtor's property, or the transfer of nondebtor property related to "the debtor's property or financial affairs" to the trustee.

This was the law before the adoption of present Rule 501.  In *McCarthy v. Arndstein*, 266 U.S. 34, 39 (1924), the Court stated, with respect to examination of a third party:

> There is no provision [in the Bankruptcy Act] prescribing the rules by which the examination is to be governed. These are, impliedly, the general rules

8

governing the admissibility of evidence and the competency and compellability [*sic*] of witnesses.[6]

When the Advisory Committee on Federal Rules attempted to codify the law of privileges in the early 1970s, it was rebuffed, and Congress itself wrote and adopted Rule 501. An Act to Establish Rules of Evidence for Certain Courts and Proceedings, Pub. L. No. 93-595, § 1, 88 Stat. 1926, 1933-34 (1975). According to a leading treatise,

> Rather than adopt the detailed privilege rules promulgated by the Supreme Court in 1974, Congress chose a flexible standard for Rule 501, requiring courts to treat privileges on a case-by-case basis. That standard, as stated in the Rule, holds that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." By adopting this standard, "Congress set forth the means for evolution of federal privilege law."

3 WEINSTEIN'S FEDERAL EVIDENCE § 501.02[1][a] (2011) (citing Dianne Amann and Edward Imwinkelried, *The Supreme Court's Decision to Recognize a Psychotherapist Privilege in* Jaffee v. Redmond*, 116 S. Ct. 1923 (1996): The Meaning of "Experience" and the Role of "Reason" Under Federal Rule of Evidence 501*, 65 U. CIN. L. REV. 1019, 1030 (1997)).

Of particular interest were cases covered by federal statutes such as Section 541 and 542, which draw heavily on state law, but which make the ultimate rule one of federal law. In this area, the legislative history is clear that federal privilege law was to supply the rules. As the Conference Report to the legislation that ultimately adopted Rule 501 stated:

> When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply.

---

[6]*McCarthy* dealt with the examination of a debtor, and the scope of that debtor's privilege against self-incrimination. With respect to the debtor's refusal to turn over books and records on the grounds that such documents might force him to give over documents indicating that he had committed a crime, the Court was not very solicitous. "The books and papers of a business are a part of the bankrupt estate . . . . To permit him to retain possession, because surrender might involve disclosure of a crime, would destroy a property right. The constitutional privilege relates to the adjective law. It does not relieve one from compliance with the substantive obligation to surrender property." 266 U.S. at 41.

H.R. REP. NO. 93-1597, at 7-8 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7098, 7101.  Although

there is not much law on the subject, what there is suggests that federal law provides the

applicable rules of privilege.  *See, e.g.*, *United States v. Bauer*, 132 F.3d 504, 510 n.19 (9th Cir.

1997) ("'Issues concerning application of the attorney-client privilege in the adjudication of

federal law are governed by federal common law.'") (citing *Clarke v. American Commerce Nat'l

Bank*, 974 F.2d 127, 129 (9th Cir. 1992)); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 367

n.10 (9th Cir. 1992) (in federal question cases with pendent state law claims, privileges are

governed by federal common law); *Int'l Horizons, Inc. v. Comm. of Unsecured Creditors (In re Int'l

Horizons, Inc.)*, 689 F.2d 996, 1003-05 (11th Cir. 1982) (bankruptcy court refused to apply state

accountant-client privilege even though important state interest was involved); *Barnett Bank of

Tampa, NA v. Muscatell (In re Muscatell)*, 93 B.R. 268, 270-71 (Bankr. M.D. Fla. 1988)

(bankruptcy case governed by federal law, so no accountant-client privilege recognized).

In particular, courts have uniformly applied federal privilege law in connection with

Rule 2004 examinations, especially when a subpoena is issued in connection with the

examination.  *Dynamic Fin. Corp. v. Kipperman (In re N. Plaza, LLC)*, 395 B.R. 113, 122 (S.D.

Cal. 2008) (federal privilege law applies where a subpoena issues in connection with a Rule

2004 examination); *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 254-55 (Bankr. S.D.N.Y.

2005) (federal attorney-client privilege law applies where a subpoena duces tecum issues

pursuant to a Rule 2004 examination); *In re Rafsky*, 300 B.R. 152, 154 (Bankr. D. Conn. 2003)

(declining to recognize state martial privilege asserted by debtor's spouse in response to a

subpoena duces tecum issued in connection with Rule 2004 examination where federal law

did not provide for such privilege).[7]  *See also* 9 COLLIER ON BANKRUPTCY ¶ 2004.02[4], at n.19

---

[7]Rule 501 requires reference to state privilege law only when a discrete bankruptcy
adversary proceeding involves solely a state law claim.  *See In re Couch*, 80 B.R. 512, 514-16
(S.D. Cal. 1987) (applying California privilege law to bankruptcy proceeding where Trustee
had filed direct action for claims under California Insurance Code); *In re Tidewater Group, Inc.*,
65 B.R. 179, 181 (Bankr. N.D. Ga. 1986) (applying state privilege law in adversary proceeding
concerning solely state tort and contract law issues).

1  (Henry Sommer & Alan Resnick, eds., 16th ed. 2011) ("Federal law as opposed to state law

2  controls privileges available in the Rule 2004 examination context.").

3        **C.**    ***Does a Joint-Client Privilege Exist?***

4        Initially, the Trustee contends that the privilege cannot be asserted against it.  After all,

5  the Trustee is just trying to get information about assets of the estates.  To achieve that goal,

6  it is asking a former attorney for the debtors to turn over the debtors' files.  There can be no

7  privilege in such circumstances, argues the Trustee, because the delivery of documents or

8  communications to the debtors effectively waived the privilege other recipients of the

9  communications may have had.

10        SDW counters that the joint-client privilege is an exception to the Trustee's argument.

11  It points to the language of Section 542(e) which makes any turnover "[s]ubject to any

12  applicable privilege."  Here, SDW claims the joint-client privilege applies.  Under the joint-

13  client privilege, clients may jointly retain (or one client may retain for the joint benefit of

14  others) an attorney as their common agent on a legal matter of common interest.  With

15  respect to matters of common interest, each joint client may be privy to the other's

16  communications with the attorney without the attorney-client privilege protection being

17  waived by that breach of confidentiality.  *Griffith v. Davis*, 161 F.R.D. 687, 693 (C.D. Cal. 1995)

18  ("Thus, the joint client doctrine typically has been applied to overcome what would otherwise

19  have constituted a waiver of confidentiality because a communication had been shared

20  between two clients."); 1 PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED

21  STATES § 4:30 (2011) [hereinafter "ATTORNEY-CLIENT PRIVILEGE"]; RESTATEMENT (THIRD)

22  OF THE LAW GOVERNING LAWYERS § 75 (2000).  This is an exception to the general principle

23  that communications in the presence of, or shared with, third parties destroys the

24  confidentiality of the communications.

25        Although the joint clients have a privilege against third parties under this exception, it

26  does not generally override the responsibilities owed by the attorney to each client, nor does it

27  protect communications among clients when they become adversaries.

28

The privilege, however, may only be employed to block third party access to, and use of, these confidential communications. The communications are not privileged between the joint clients themselves when they are subsequently engaged in litigation over the subject of the joint consultation.

ATTORNEY-CLIENT PRIVILEGE, *supra*, § 8.17.

Here, the Trustee claims that the joint-client privilege does not apply to him, as the estate representative, with respect to joint communications. The debtors received these communications; he simply wants copies of them. Put another way, he wants property belonging to the estates. His theory that the content of joint communications belongs equally to the clients is recognized, at least implicitly, by cases examining the issue. *In re Crescent Resources, LLC*, No. 09-11507-CAG, ___ B.R. ___, ___, 2011 WL 3022554, at *20-21 (Bankr. W.D. Tex., July 22, 2011); *Scroggins v. Powell, Goldstein, Frazer & Murphy (In re Kaleidoscope, Inc.)*, 15 B.R. 232, 244 (Bankr. N.D. Ga. 1981) ("[T]he court believes that with regard to legal files created . . . during the course of joint representation . . . the entire contents of those legal files belong jointly to the clients in question, with each having an undivided ownership interest in, and equal right of access to, all of those files."), *rev'd on other grounds*, 25 B.R. 729 (N.D. Ga. 1982). *See also Grand Trunk Western R. Co. v. H.W. Nelson Co.*, 116 F.2d 823, 835 (6th Cir. 1941) ("[W]hen two persons employ a lawyer as their common agent, their communications to him as to strangers will be privileged, but as to themselves, they stand on the same footing as to the lawyer and either can compel him to testify against the other as to their negotiations in any litigation between them, when the subject of the conversation is competent"); *In re Covenant Fin. Group of Am., Inc.*, 243 B.R. 450, 457 (Bankr. N.D. Ala. 1999) ("It is well settled and universally accepted that the attorney-client privilege, 'although quite conclusive as between an attorney and a sole client, does not apply as to communications between the parties involved in a given transaction which has been submitted to an attorney for action or advice by two or more persons for their mutual benefit.'"). *See also* MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. 30 (2004) ("With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it

must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.").

The Trustee also invokes the adversary exception, as he and SDW are now adversaries in this contested matter.  When there is a contest between the parties who jointly received the communication, there is no confidentiality, and thus a critical element of the attorney-client privilege is lacking.  *Securities Investor Protection Corp. v. R.D. Kushnir & Co.*, 246 B.R. 582, 588 (Bankr. N.D. Ill. 2000) ("Under the 'joint defense doctrine' if the same lawyer jointly represents two or more clients with respect to the same matter, those clients have no reasonable expectation that their communications to the lawyer with respect to the joint matter will be kept secret from each other."); *Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 200, 204 (D.D.C. 1998) ("It was clear, under the law of this Circuit, that when a lawyer represented two persons and they later had a falling out and one sued the other, neither could claim the attorney-client privilege to prevent the lawyer from disclosing to one what the other told the lawyer."); *Int'l Broth. of Elec. Workers, Local Union No. 323 v. Coral Elec. Corp.*, 104 F.R.D. 88, 89 (S.D. Fla. 1985) ("[I]f an attorney represents two parties with respect to a single matter, then communications with respect to that matter are not privileged from disclosure in a subsequent dispute between the two clients.").

As stated by the Third Circuit:

> The great caveat of the joint-client privilege is that it only protects communications from compelled disclosure to parties outside the joint representation. When former co-clients sue one another, the default rule is that all communications made in the course of the joint representation are discoverable . . . . This rule has two bases: (1) the presumed intent of the parties, and (2) the lawyer's fiduciary obligation of candor to both parties.

*Teleglobe USA Inc. v. BCE, Inc. (In re Teleglobe Commc'ns Corp.)*, 493 F.3d 345, 366 (3d Cir. 2007) (citing RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 75 cmt. d.).  As such, the privilege does not apply in disputes between two clients, as is the case here.[8]

---

[8]Nevada has, too, long recognized this doctrine.  *See Hough v. Reserve Gold Mining Co.*, 55 Nev. 375, 395, 35 P.2d 742, 748 (1934); *Livingston v. Wagner*, 23 Nev. 53, 58, 42 P. 290, 292 (1895) ("When a lawyer acts as the common attorney of two parties, their communications to

SDW contends that the current turnover motion is not sufficiently adversarial  He cites to *In re Bounds*, 443 B.R. 729 (Bankr. W.D. Tex. 2010).  In that case, a third party, Fernea, had bought the stock of two corporations from the debtor's estate.  Fernea then sought an examination under Rule 2004 from the debtor Bounds  – the former owner of the corporations.  Fernea sought to rebuff the claim of privilege asserted by the debtor, claiming that the communications sought had been transmitted to the two corporations as well.

In its decision, the court stated that "'[a]n examination under Bankruptcy Rule 2004 is nonadversarial in nature and aimed at discovering evidence upon which future causes of action may be based . . . .'"  *Id.* at 732 (quoting *In re North Plaza, LLC*, 395 B.R. 113, 122 (S.D. Cal. 2008)).  SDW concludes from this, and the fact that the Rule 2004 examination was quashed, that a Rule 2004 examination is sufficiently nonadversarial that the litigation exception is not triggered.

SDW's assumption is incorrect.  Although the court did note the nonadversarial nature of a Rule 2004 examination and did quash the request for one, the two were not connected. Initially, the quotation used was not used in the court's joint privilege analysis, but rather in its choice of law analysis.  443 B.R. at 732.  It allowed the court to conclude that federal rules applied even though the Rule 2004 examination was attempting to discover evidence of state law malpractice claims.[9]

Next, although the court did quash the examination, it did not use the nonadversary nature of the Rule 2004 examination as a basis for its ruling.  Rather, the court relied upon the

_____

him are privileged as far as concerns strangers, but as to themselves they stand on the same footing as to the lawyer, and either can compel him to testify against the other as to their negotiations"); *Gruber v. Baker*, 20 Nev. 453, 463, 23 P. 858, 860 (1890) ("An attorney employed by two or more parties to give advice in a matter in which they are mutually interested can, no doubt, on litigation subsequently arising between themselves, be examined as a witness, at the instance of either of the parties, as to communications made when he was acting as attorney for all. But he cannot disclose such communication in a controversy between such parties, of either of them, and third persons.").

[9]Along the way, however, the court did order the production of documents for which there was no privilege asserted, and documents related to claims against the parties seeking to quash the examination. *Bounds*, 433 B.R. at 436.

14

fact that the applicant was Fernea, and not the two corporations whose stock had been bought, and who had been the former clients.  As a third party stranger to the communications, Fernea, as the new owner, had no standing to invoke the litigation exception to the joint-client privilege.  *Id.* at 734.[10]

The adversary exception does apply here.  The Trustee is seeking turnover under Section 542(e); SDW admits as much by invoking the same section as a defense.  Normally, an action seeking "to recover money or property" must be commenced by an adversary proceeding, which SDW concedes would be sufficient to satisfy the exception.  FED. R. BANKR. P. 7001(1).  That same rule, however, makes an exception for such "a proceeding to compel the debtor to deliver property to the trustee . . . ."  *Id.*

As the attorney is simply an agent of the client, it follows that an attorney for the debtor is covered by this exception.  And this proceeding, although a contested matter, is decidedly an action by the trustee against an agent of the debtor for purposes of Rule 7001(1).  As such, the lack of an adversary proceeding is not determinative.  In order to secure the files and items covered by Section 542, the Trustee has had to issue a subpoena under Rule 9016.  That action, necessitated by SDW's torpid response to the Trustee's efforts to gain access to the estates' files at SDW, injects the necessary adversary nature into the proceedings.[11]

---

[10]The court also rejected the Trustee's request for a Rule 2004 examination as it would not allow the Trustee to waive the individual debtor's attorney-client privilege.  *Bounds*, 433 B.R. at 734-36.

[11]The fact that the Trustee chose to use a Rule 2004 examination as the vehicle for SDW's examination is of no consequence, as the court would have, upon request, limited the examination to the subjects permissible in a deposition under Rule 7026 because the examination was to be taken in connection with a pending matter.  *See, e.g.*, *In re Dinubilo*, 177 B.R. 932, 941-43 (E.D. Cal. 1993); *In re Blinder, Robinson & Co.*, 127 B.R. 267, 274-75 (D. Colo. 1991); *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004); *In re 2435 Plainfield Ave., Inc.*, 223 B.R 440 (Bankr. D.N.J. 1998); *In re The Bennett Funding Group, Inc.*, 203 B.R. 24, 25-28 (Bankr. N.D.N.Y. 1996) (discussing cases); COLLIER, *supra*, ¶ 2004.01[5], at n.5.  In any event, SDW raised no objection to the Trustee's use of the Rule 2004 examination instead of a deposition. Even if the Trustee had opted to depose SDW, however, the analysis with respect to the joint-client privilege still applies, as courts have recognized the privilege within the context of a deposition.  *See, e.g, Value Prop. Trust v. Zim Co. (In re Mortgage & Realty Trust)*,

1    The court thus concludes that there is no basis for SDW to invoke the attorney-client

2    privilege on Habash's behalf.[12]  Even if the court were to conclude that the joint-client

3    privilege applied, however, SDW has not established the requisite basis to successfully invoke

4    the privilege.

5    **D.    Analysis if the Joint-Client Privilege Applies**

6    Under federal law, SDW bears the burden of establishing the applicability of the

7    privilege.  "The proponent of the privilege bears the burden of persuasion for each element of

8    the privilege, unassisted by presumptions that confidentiality was intended and has been

9    preserved, or that legal advice was being sought through the consultations."

10    ATTORNEY-CLIENT PRIVILEGE, *supra*, § 11:10.  *See also United States v. Richey*, 632 F.3d 559,

11    566 (9th Cir. 2011) ("The party asserting the attorney-client privilege has the burden of

12    establishing the relationship and privileged nature of the communication."); *United States v.*

13    *Bauer*, 132 F.3d 504, 507 (9th Cir. 1997); *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 327

14    (N.D. Cal. 1985) ("The proponent of the privilege carries the burden of establishing all

15    elements of the privilege, including confidentiality which is not presumed, . . . and non-

16    waiver.").

17    In establishing the existence of the attorney-client privilege, the Ninth Circuit requires

18    proof of eight elements.  "The attorney-client privilege exists where: '(1) [ ] legal advice of any

19    kind is sought (2) from a professional legal adviser in his capacity as such, (3) the

20    communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at

21    his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8)

22    unless the protection be waived.'" *Richey*, 632 F.3d at 566 (quoting *United States v. Graf*, 610

23    F.3d 1148, 1156 (9th Cir. 2010)).  Because the attorney-client privilege is in derogation of the

24    search for truth, it is "narrowly and strictly construed." *United States v. Gray*, 876 F.2d 1411,

25    ─────────────────

26    212 B.R. 649, 654 (Bankr. C.D. Cal. 1997) (applying joint-client privilege in deciding motions
    to compel testimony to unanswered deposition questions).

27

28    [12]The court notes that APH has not instructed SDW to invoke the privilege.  The
    letter from Ms. Baxter-Walker invoked the privilege only on behalf of Habash.

1415 (9th Cir. 1989), *cert. denied*, 495 U.S. 930, (1990); *see also Fisher v. United States*, 425 U.S. 391, 403 (1976) (holding since attorney-client privilege "has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose").

       1.    *Did SDW Satisfy Its Burden to Show the Joint-Client Privilege Applies to the Items?*

To meet its burden, SDW submitted the Driggs Declaration and a privilege log. Even when combined, these two items are insufficient to invoke the privilege. The privilege log is conclusory and vague. It is reprinted here in its entirety:

DOCUMENTS AND CATEGORIES OF DOCUMENTS NOT PRODUCED

1. billing statements to APH, Inc. (APH, Inc. attorney client privilege);

2. June 17, 2004 seven (7) pages handwritten notes by SDW associate attorney identified as re APH, Inc. (APH, Inc. attorney client privilege);

3. April 13, 2005 five (5) page typewritten memorandum by SDW associate attorney to SDW partner Douglas Driggs identified as re APH, Inc. (APH, Inc. attorney client privilege)

4. post- May 2005 e-mails and attachments by SDW partner Douglas Driggs to Mr. Louis Habash, APH, Inc. and/or their litigation counsel identified as re APH, Inc. (Mr. Louis Habash, APH, Inc. attorney client privilege)

In order to raise a competent privilege claim and avoid waiver, a privilege log must have sufficient detail to allow the court to make a reasoned decision on the privilege claim. As stated in ATTORNEY-CLIENT PRIVILEGE:

> A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality. Unless the affidavit is precise to bring the document within the rule, the Court has no basis on which to weigh the applicability of the claim of privilege. An improperly asserted claim of privilege is no claim of privilege at all.

ATTORNEY-CLIENT PRIVILEGE, *supra*, § 11:11 (quoting *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974). *See, e.g.*, *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D.

691, 698 (D. Nev. 1994) ("This demonstration [of attorney-client privilege] is generally accomplished by the submission of a privilege log which identifies (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the documents or informed of its substance, and (e) the date the document was generated, prepared, or dated.").

Against these standards, SDW's privilege log is fatally deficient. Two items – item 1 regarding billing statements, and item 4 regarding "emails and attachments" – are insufficiently detailed. "A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted." *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002) (citing *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir. 1977)). That obligation is not met by broad, generic description of types of documents of unknown quantity. "Blanket assertions are 'extremely disfavored.'" *Id.* (quoting *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).

In this regard, the privilege log as to items 1 and 4 is insufficient to invoke the privilege as to those items. It does not contain a "specific designation and description of the documents within its scope." ATTORNEY-CLIENT PRIVILEGE, *supra*, § 11:11 (quoting *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974). For example, it does not identify individual communications by date. It does not indicate who prepared the item and to whom it was sent other than the person invoking the privilege.[13] And in the case of item 4, it does not specify the topic or the subject of the communication.

The Driggs Declaration does not provide evidence sufficient to cure these deficiencies. As to the billing statements, the Driggs Declaration says:

> SDW's billing statements for work on behalf of Mr. Habash, APH and the entities owned, controlled or managed by them, including Debtors, were

---

[13]This is particularly shocking in light of the fact that these are documents in which the debtors have an ownership or other interest. Otherwise, they would not be within the scope of the subpoena, and interposition of a privilege objection would be meaningless.

> addressed and delivered to APH at its Newport Beach, California office. SDW did not bill Debtors but instead billed APH. SDW's billing statements to APH included detailed descriptions of the work performed by SDW's attorneys on particular issues.

Driggs Declaration ¶ 18.  This averment does not identify particular statements or individual entries that might be covered by the privilege.  It gives no information from which the court could form an opinion as to the existence of a privilege.[14]  And although it refers to "detailed descriptions of the work performed," SDW did not provide any of those detailed descriptions to the court, nor did SDW provide any additional detail beyond that contained in the Driggs Declaration.

    As to item 4, the Driggs Declaration says only: "These confidential communications included numerous e-mails and attachments to and from Mr. Habash, APR and sellers' litigation counsel in the L.A. Pacific litigation." *Id.* ¶ 27.  In addition to the failure to provide any identifying information, his paragraph is woefully deficient in giving the court the "precise and certain reasons for preserving [the documents'] confidentiality."  ATTORNEY-CLIENT PRIVILEGE, *supra*, § 11:11 (quoting *Int'l Paper Co. v. Fibreboard Corp.*, 63 F.R.D. 88, 94 (D. Del. 1974).  It does not specify the scope or subject matter of the topics covered.  It makes no distinction between communications that might be privileged, and those that are not.  It is tantamount to, after the fact, the disfavored practice of stamping all correspondence "confidential," regardless of whether it was ever intended to be so.  *See generally Pure Power Boot Camp v. Warrior Fitness Boot Camp,* 587 F. Supp. 2d 548, 564 (S.D.N.Y. 2008); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 643 (S.D.N.Y. 1991).

    To the extent that SDW expects the court to sustain its objection on its ipse dixit statement that these communications were "confidential," that expectation is unreasonable. *Martin*, 278 F.3d at 1000 ("A party claiming the privilege must identify specific communications and the grounds supporting the privilege as to each piece of evidence over which privilege is asserted."); *Bauer*, 132 F.3d at 507 ("A party asserting the attorney-client

---

[14]Billings statements are generally not confidential communications as well.  That argument is addressed below.

1  privilege has the burden of establishing the relationship and the privileged nature of the

2  communication.").

3  As a result, SDW has not met its burden of showing that items 1 and 4 are covered by

4  the attorney-client privilege.

5        2.  *If SDW Has Established Applicability of the Joint-Client Privilege, Did It Sustain*

6           *Its Burden With Respect to Each Item on the Privilege Log?*

7  Even if the privilege log or the Driggs Declaration had contained sufficient detail,

8  however, it is not likely that the items would still have qualified for protection under the

9  attorney-client privilege.  This can be shown by an examination of each of the claimed items

10  in the privilege log.

11        a.  **Billing Statements Sent Care of APH**

12  The first item in the privilege log lists the following as protected by the attorney-

13  client privilege: "1. billing statements to APH, Inc. (APH, Inc. attorney client privilege)."  This

14  privilege is claimed by APH apparently based on SDW's practice of providing one unitary bill

15  to all the Habash entities, care of APH.

16  One of the elements, however, of the attorney-client privilege is that the

17  communication sought to be protected be confidential.  Billing statements are usually not

18  considered confidential; they are records of work performed coupled with a request to be

19  paid.  As stated by the Ninth Circuit:

20      Our decisions have recognized that the identity of the client, the amount of the
21      fee, the identification of payment by case file name, and the general purpose of
    the work performed are usually not protected from disclosure by the
22      attorney-client privilege.

23  *Clarke*, 974 F.2d at 129; *Salas v. United States (In re Grand Jury Witness)*, 695 F.2d 359, 362 (9th

24  Cir. 1982) ("a simple invoice requesting payment for unspecified services rendered reveals

25  nothing more than the amount of the fee and would not normally be privileged.").  *See also*

26  *O'Neal v. United States*, 258 F.3d 1265, 1276 (11th Cir. 2001) ("Indeed it is the law of this

27  circuit that information involving receipt of attorneys' fees from a client is not generally

28  privileged."); *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) ("Typically, the

attorney-client privilege does not extend to billing records and expense reports.").  As SDW did not make any showing that the billing records contain matters that were intended to be confidential,[15] the billing statements are not protected by the attorney-client privilege.

> b.  **Seven Pages of Handwritten Notes by a SDW Associate Attorney**

The second item of the privilege log is somewhat of a puzzle.  It appears to cover notes taken by a SDW attorney, an item normally covered by the attorney-work product privilege, not the attorney-client privilege.[16]  On this item, SDW has completely failed to meet its burden of proof.  SDW has to show, among other things, that the item was communicated to a client and was confidential.  *Richey*, 632 F.3d at 566 ("The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice.").  There is no indication in the privilege log that this material was ever communicated to APH, and no evidence that it was ever intended to be confidential.  Indeed, the Driggs Declaration does not even mention this item.  As a consequence, the material is not covered by the attorney-client privilege.

---

[15]Although the "the general tenor of the federal case law . . . [is that] 'the fee arrangement between an attorney and his client is generally not privileged,'" 24 CHARLES ALAN WRIGHT, KENNETH W. GRAHAM, JR., VICTOR JAMES GOLD & MICHAEL H. GRAHAM, FEDERAL PRACTICE AND PROCEDURE, EVIDENCE § 5484, at n.388 (2011) (quoting *Schofield v. United States (In re Grand Jury Proceeding)*, 721 F.2d 1221, 1222 (9th Cir. 1983)), there are circumstances, not proved here, in which billing material might be covered by the attorney-client privilege.  *Id.*

[16]The work product doctrine was announced in *Hickman v. Taylor*, 329 U.S. 495 (1947), and later codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure.  It protects "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."  FED. R. CIV. P. 26(b)(3).

c.    **Five page typewritten memorandum, dated April 13, 2005,**
**by SDW associate attorney to Driggs**

Item 3 of the privilege log is little different than item 2.  It also appears to be an internal document of SDW.  The privilege log does not indicate that the matter was ever communicated or sent to APH, and its status as confidential is also not proved.  Unlike item 3, however, the Driggs Declaration does mention item 3.  It states:

> In April 2005, SDW was asked by Bullivant's Mr. James to prepare a memorandum relating to the issues raised in the dispute. At my direction, an SDW associate prepared a memorandum identified, inter alia, as Re: A.P.H., Inc. I sent this April 2005 five-page typewritten memorandum to either Mr. Habash or Mr. James, or both of them, in April 2005.

Driggs Declaration ¶ 23.

This evidence is insufficient to invoke the privilege.  Although a charitable reading is that the memorandum was sent to Habash, there is no indication that it was intended to be confidential.  There is no specification as to whether the memorandum is directed at facts, at law, or at the procedure involved.  It could be a memorandum about the public practices of California courts, or it could contain confidential communications regarding litigation strategy.  The court cannot tell on the record presented.  "The proponent of the privilege carries the burden of establishing all elements of the privilege, including confidentiality which is not presumed, . . . ." *Hartford Fire Ins. Co.,* 109 F.R.D. at 327.  *See also Bauer*, 132 F.3d at 507. Under this standard, SDW has not carried its burden to show that the memorandum was intended to be confidential, and thus it is not covered by the attorney-client privilege.

d.    **Post-May 2005 E-mails and Attachments Sent by Driggs to**
**Habash, APH, And/Or Their Litigation Counsel**

Item 4 of the privilege log covers an unknown number of emails and attachments from Driggs to Habash and his companies (including, presumably, the debtors).  Unlike item 3, the Driggs Declaration does refer generally to the items claimed privileged.  Paragraphs 25 through 28 of that declaration state:

> 25. As the SDW attorney primarily responsible for the sellers' transaction work in the 2004 sale to L.A. Pacific, I was a fact witness in the

litigation that followed. This included the state court actions filed in California and Nevada and the JAMS Arbitration ("the L.A. Pacific litigation").

26. As a fact witness, I had numerous communications with Mr. Habash, APH and Debtors' litigation counsel regarding the underlying facts in the L.A. Pacific litigation. I had confidential communications with these same persons on matters regarding SDW's co-client, Mr. Habash, and the facts regarding his status as a potential party, and subsequently an actual party, in the L.A. Pacific litigation.

27. These confidential communications included numerous e-mails and attachments to and from Mr. Habash, APR and sellers' litigation counsel in the L.A. Pacific litigation. I understand these confidential communications have been withheld from production on grounds of Mr. Habash's and APH's attorney-client privileges.

28. After the start of the L.A. Pacific litigation in May 2005, SDW continued to perform transactional work for Mr. Habash, APH, Hotels Nevada, LLC and Inns Nevada, LLC and the other entities owned or controlled by Mr. Habash or managed by APH.

There are multiple problems with this claim of privilege. SDW, "[a]s the party asserting the privilege, . . . was obliged by federal law to establish the privileged nature of the communications and, if necessary, to segregate the privileged information from the non-privileged information." *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009). *See also Bauer*, 132 F.3d at 507; 3 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 503.20[4][b] (Joseph M. McLaughlin, ed., 2d ed. 2009) (discussing rule that blanket claims of privilege are generally disfavored).  In addition to the lack of specificity and particularity SDW was obligated to provide, the blunderbuss and blanket nature of its objection dooms the privilege assertion. *Martin*, 278 F.3d at 1000 ("Blanket assertions are 'extremely disfavored.'") (quoting *Clarke*, 974 F.2d at 129); *In re Horn*, 976 F.2d 1314, 1318 (9th Cir. 1992) ("Blanket assertions of attorney-client privilege in response to a subpoena duces tecum are strongly disfavored.").

But there are further problems.  Although the Driggs Declaration indicates that many of the emails relate to trial activity, one has to recall that this proceeding relates primarily to property rights and rights under Section 542(e), not to discovery rights by a third party.   The Trustee is the successor to two of SDW's former clients.  The fact that SDW even listed the communications means that it has made a determination that these communications were delivered to or shared with the debtors, and thus the Trustee, as each debtor's successor in interest, has a cognizable interest in them.  Put simply, they are at least partially the debtors',

and hence the estates', property.  Another way of looking at this is that SDW once communicated this information to the debtors and others, and is now unfairly favoring another client who received the same information at the same time.

Further, paragraph 28 is completely deficient to the extent it attempts to cover non-litigation communication.  It does not list particular communication, nor does it specify any date, any subject, or any purpose – confidential or otherwise – for the communications.  SDW bore the burden of providing this information under pain of losing the privilege, *Ruehle*, 583 F.3d at 609;  *Martin*, 278 F.3d at 1000; *Horn*, 976 F.2d at 1318; *Clarke*, 974 F.2d at 129.  Its failure to supply the necessary information means that any privilege that may have existed has been waived.

## III.    Conclusion

SDW has failed in at least three showings.  It has not shown that the joint-client privilege applies to the items it seeks to shield from turnover.  It has not shown that, even if the joint-client privilege did apply, why that privilege precludes the Trustee, as the debtors' successor, from obtaining items to which the debtors were privy and which are now claimed privileged.  Finally, it has not shown that the adversary exception to the joint-client privilege does not apply on these facts.

As a separate and sufficient holding, even if SDW had shown that the joint-client privilege applied, SDW has not met its burden to demonstrate that the individual items on the privilege log produced are protected by the privilege.

SDW is hereby ordered to turn over all documents referred to in the privilege log no later than five business days after the date of the entry of this order.  This order constitutes the court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

Copies sent to:
CM/ECF ELECTRONIC NOTICING
BNC MAILING MATRIX

# # #